MARTIN D. BYRNE, and MARY E., his wife *vs.* JAMES GUNNING.

*Trust deed—Construction.*

A grantor by deed conveyed all of his property, real and personal, to three of his sons on certain trusts. The deed recited that he had purchased for the sum of $10,000 a tract of land known as "Gunning's Delight," and that the deed for the same was made to one of his daughters and her husband; and that they had mortgaged the same to the grantor for $10,000; and that it was his intention that they should convey the said tract to the trustees named in the deed; and that the trustees should release the mortgage; and that until his daughter and her husband made the conveyance, they should receive no benefit under the trust. The deed provided that the grantees should have full power over the property, as fully and absolutely, and to all intents and purposes, as if the conveyance had been made to them free from any trust, and they should have full power to sell and dispose of the same, and said "Gunning's Delight," if conveyed to them, except said "Gunning's Delight" shall not be sold until after the death of "the grantor; that the grantor should have the net profits arising from all the property, and should have full right to use and occupy the real estate during the term of his natural life, and should pay all taxes and assessments, and keep down all incumbrances." The deed further declared that it was the object and intention of the parties thereto that the grantor should have an interest for life in the benefits arising from the trust. The grantor wished the property to be divided after his death among his children and his grand-children, who were the children of a deceased son. HELD :

That under the deed the legal title to the realty vested in the grantor, and to the personalty in the trustees who had no right to sell it during the life of the grantor.

On a bill filed for the purpose of setting aside a trust deed on the ground that it did not conform to the directions given by the grantor for the drafting of it, and that it was executed by mistake, it appeared that while some of the consequences of the

deed might be displeasing to him, it accomplished, in a general way, the objects which he seemed to have desired. The specific instructions given for the drafting of the deed were not proved, and there was no evidence that the instructions received were misunderstood or disobeyed. HELD:

That the bill should be dismissed.

APPEAL from the Circuit Court for Alleghany County in Equity.

The case is stated in the opinion of the Court.

The cause was submitted on briefs to ALVEY, C. J., ROBINSON, BRYAN, FOWLER, and McSHERRY, J.

*William E. Walsh*, for the appellants.

*Benjamin A. Richmond*, for the appellee.

BRYAN, J., delivered the opinion of the Court.

James Gunning filed a bill in equity in the Circuit Court for Alleghany County for the purpose of setting aside a certain deed which he had made to his three sons, James H., Joseph M., and John B. Gunning. The bill alleged that the deed did not conform to the directions given by the grantor for the drafting of it, and that it has an effect which he never intended, and that it was executed by him in its present form wholly by mistake. The defendants were the grantees and the other children of the grantor, and the husband of one of his daughters, and the children of a deceased son, and their mother, and two other beneficiaries under the deed. After answers and testimony, the Court passed a decree annulling the deed, and containing certain other provisions which will hereafter be noticed.

Before considering the testimony we will examine the deed and see what is its effect. It conveys all the prop-

erty of the grantor to three of his sons on certain trusts. It recites that he had purchased for the sum of ten thousand dollars a tract of land, known as "Gunning's Delight" or "Barkdoll's Farm," and that the deed was made to Martin Byrne and Mary, his wife, the said Mary being a daughter of James Gunning; and that they had executed a mortgage on the tract for ten thousand dollars in favor of the said James Gunning; and that it was his intention that they should convey the said tract to the trustees named in the deed; and that the trustees should release the mortgage; and that until Byrne and wife should make the conveyance of the tract, they should not receive any benefit from the deed to the trustees. The trusts are declared in these words: "In trust, however, for the purposes herein stated, said James H. Gunning, Joseph M. Gunning and John B. Gunning, their heirs, executors, administrators and assigns, and shall have full control and power over the things herein conveyed to them, and said "Gunning's Delight" if conveyed to them, as fully and absolutely and to all intents and purposes as if this conveyance was made to them free from any trust or trusts of any kind whatever; said James H. Gunning and Joseph M. Gunning and John B. Gunning, their heirs, executors, administrators and assigns, shall have full power to sell, convey, dispose of, of all things herein conveyed to them, and said "Gunning's Delight" if conveyed to them, except said Gunning's Delight, shall not be sold until after the death of said James Gunning, and purchasers shall not be held to look to the application of any purchase money, and said James H. Gunning and Joseph M. Gunning and John B. Gunning, their heirs, executors, administrators and assigns, shall in nowise, or in no case be required to give, or furnish bond or security for the performance of their duties as said trustees; said James Gunning shall have the net profits arising from all the things herein

conveyed to said James H. Gunning, Joseph M. Gunning and John B. Gunning; and if said "Gunning's Delight" shall be conveyed to said James H. Gunning, Joseph M. Gunning and John B. Gunning for and during the period of his natural life, to cease and determine upon the death of said James Gunning, said James Gunning shall pay all taxes and assessments, and keep down all encumbrances upon the things herein conveyed, and upon said Gunning's Delight, if said Mary E. Byrne and Martin D. Byrne, her husband, convey said "Gunning's Delight" to said James H. Gunning, Joseph M. Gunning and John B. Gunning, their heirs and assigns forever, and said James Gunning shall have full right to use and occupy for and during the term of his natural life, all the real estate herein conveyed, and the net profits and income arising on the personal property herein conveyed to said James H. Gunning, Joseph M. Gunning and John B. Gunning, their heirs, executors, administrators and assigns, to cease and determine upon the death of the said James Gunning. The object and intention of the parties hereto is that said James Gunning shall have an interest for life in the benefits arising from the trust by their instrument created upon the death of said James Gunning; and if said Mary E. Byrne and Martin D. Byrne, her husband, shall have conveyed "Gunning's Delight" to said James H. Gunning, Joseph M. Gunning and John B. Gunning, their heirs and assigns forever, then in that case said James H. Gunning, Joseph M. Gunning and John B. Gunning shall divide said things herein conveyed to said James H. Gunning, Joseph M. Gunning and John B. Gunning, and said "Gunning's Delight" or the proceeds of the sale of any of the things herein conveyed, and said "Gunning's Delight;" and after certain deductions and payments provision is made for conveying a seventh part to each of the six surviving children of the grantor, and

a seventh part to the widow of a deceased son for the benefit of his children; and if Martin Byrne and his wife should fail to convey "Gunning's Delight" to the trustees, the division of the property is to be made into six parts, and they are to be excluded from all participation in it. The language in which the trust is described is a good deal involved and somewhat obscure, and the punctuation in some instances adds to the obscurity. The general intention, however, appears to be plain enough. The grantor wished to have the benefit of his property for life, and after his death he wished it to be divided among his children, and his grandchildren who were the children of a deceased son. In express words it is stated that he is to pay all taxes and assessments, and to keep down all encumbrances on the property, and that he is to have full right to use and occupy the real estate during the term of his natural life, and that he is to have the net profits and income arising from the personal property. It had been previously stated in the deed that he was to have the net profits for life from all the property. And as if to put the matter beyond all doubt, it is again stated that it was the object and intention of the parties to the deed that the grantor should "have an interest for life in the benefits arising from the trust." In a previous portion of the declaration of trust, it is stated that the grantees should have full power over the property as fully and absolutely, and to all intents and purposes, as if the conveyance had been made "free from any trust or trusts of any kind whatever;" and that they should have power to sell all things conveyed to them by the deed; then follow these words: "and 'Gunning's Delight' if conveyed to them, except said Gunning's Delight, shall not be sold until after the death of said James Gunning." As the deed must be so construed that all parts shall harmonize together, this portion must be understood so as not to conflict with

that clause which gives James Gunning the right to occupy the real estate for life, and which gives him the net profits of the personal property. The words "except said Gunning's Delight" seem to be separated from their natural context. The draughtsman of the deed probably meant to say that the trustees should have the power to sell all the property mentioned in the deed, except "Gunning's Delight," and that they should have the power to sell "Gunning's Delight," if it should be conveyed to them, and that the property should not be sold until after the death of James Gunning. In a long complicated and entangled sentence, the draughtsman seems to have placed some words out of their proper order, and to have omitted others. If we refer to the declaration of trust and read the words "except Gunning's Delight" immediately after the words "all things herein conveyed to them," and insert the words, "*and they*" immediately before the words "shall not be sold until after the death of said James Gunning," there will be no inconsistency between this portion of the deed and the other parts of it. This deed is not skillfully drawn, and it is not unusual for inaccurate writers to omit words necessary to a clear exposition of their meaning, and to place others out of their appropriate connexion. But with or without the construction which has been suggested for this portion of the deed, its leading purpose and intent must be sustained, and that is, to secure a life interest in the property, real and personal, to James Gunning, and its division after his death in the manner therein mentioned.

As we have seen that James Gunning has the right under the deed to occupy the real estate during his life, and is required to pay all taxes and assessments, and to keep down all encumbrances upon it, and is entitled to the net profits, he holds the legal estate therein. Notwithstanding the terms in which the real estate is con-

veyed to the trustees, there is no duty imposed upon them in connexion with it; they are not to take possession of it, or to collect and apply the rents and profits, or to pay taxes and assessments laid upon it. Under these circumstances it is well settled that the legal estate is executed in James Gunning. If the direction of the deed had been that the trustees were to permit James Gunning to receive the net rents, and nothing more had been said, it would have been implied that they were to collect the rents and pay all charges on the property, and pay over the balance to him, and they would have retained the legal estate. But here this implication cannot arise, because this duty of paying the charges is expressly imposed on James Gunning, and he is expressly invested with the right to use and occupy the real estate for the term of his natural life. The doctrine on this subject is very clearly and satisfactorily stated in *Perry on Trusts, sections* 305, 306, and 307. As the Statute of Uses does not affect the personalty, the legal title to it must remain in the trustees. *Denton vs. Denton* 17, *Md.*, 403. James Gunning is required to pay all taxes and assessments on it, and to keep down all incumbrances on it, and is entitled to the net profits during his life in like manner as these duties and rights exist in respect to the realty. We suppose that it is unnecessary for us to say that the trustees have no right to sell it during his life.

The grantor was an old man about seventy-five years of age. Having lost his wife, he determined after consultation with his children and his son-in-law and his daughter-in-law to make a settlement, of his property in such manner, as in his belief would prevent litigation after his death. For this purpose, he authorized his son James H. Gunning to prepare, or cause to be prepared a deed of trust, in which three of his sons were to be the trustees. The specific instructions given to his son

James, for the drafting of the deed are not proved, and James himself was not examined as a witness. The old man was illiterate, and very ignorant of legal matters. His views about the mode of settling his property were rather vague and ill-defined; but it appears clearly enough that he had no intention of stripping himself of his property during his life; and that he wished a deed of trust to be made to three of his sons; and that he wished their assistance in the management of his property; and that he wished them to divide it after his death in the manner directed in the deed which was executed. Some of the consequences of this deed may be displeasing to him; but it accomplishes in a general way the objects which he seems to have desired; and there is no evidence that his son James mistook, or disobeyed the instructions which he received for the preparation of it.

Byrne and his wife conveyed "Gunning's Delight" to the trustees, and of course became entitled to an interest under the deed of trust. The Circuit Court passed a decree which set aside the deed of trust, and ordered a cancellation of their deed conveying "Gunning's Delight," and directed compensation to be made to them for certain expenses which they had incurred. Certain other provisions were contained in the decree in reference to the mortgage on "Gunning's Delight," which it is not now necessary to notice. Byrne and wife appealed from this decree.

If a mistake in the preparation of the deed had been clearly proved, it would have been our duty to reform it. But there has been no evidence of fraud or imposition practiced on the grantor, and we see no reason for annulling it. We must reverse this decree, and dismiss the bill of complaint.

> *Decree reversed, and*
> *bill dismissed, with costs.*