## ROSE YAKE *v.* EDWARD J. YAKE ET AL.
[No. 97, October Term, 1935.]

*Decided February 6th, 1936.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Sigmund Levin,* with whom was *Samuel Lasch* on the brief, for the appellant.

*Joseph H. A. Rogan,* with whom were *J. Francis Ford* and *Herbert R. O'Conor* on the brief, for the appellees.

SHEHAN, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court of Baltimore City, dated September 9th, 1935, sustaining a demurrer to a petition filed by Rose Yake, also known as Rose Harris, appellant, against Edward J. Yake, appellee.

Edward J. Yake is a disabled soldier, having received serious injuries in the World War. His legs and arms were broken and his skull badly fractured. On April 6th, 1919, while suffering from his injuries and mentally incapacitated, a religious ceremony of marriage was performed between these parties.

It is not necessary to recount at length the cause of his injuries, circumstances relating to his long illness, his confinement in hospitals and asylums, or the procedural steps taken by him with regard to his supposed marriage, which resulted in a decree of annulment. This decree was passed on March 27th, 1928. In it a provision was incorporated, approving and confirming an agreement between Edward J. Yake and Rose Yake, dated February 25th, 1928. That part of the agreement with which we are here concerned provided that Edward J. Yake, for himself, his heirs, administrators, and assigns, agree to pay unto Rose Yake "30% of any and all compensation for injuries received while in the military or naval service of the United States in 1918, to which he may hereafter become entitled from the United States Government, or through the United States Veterans' Bureau, accounting from the first day of March, 1928, as long as the said Rose Yake or Rose Harris may live and remain unmarried."

The Baltimore Trust Company, a substituted guardian for Edward J. Yake, incompetent, or any other person or corporation acting as such guardian, trustee, or committee, by said agreement was directed to pay monthly unto Rose Yake, as long as she lives and remains unmar-

ried, thirty per cent. of any and all compensation for injuries received during the World War that may hereafter be paid unto the said guardian or to any substituted guardian, committee, or trustee. This the Baltimore Trust Company agreed to do, subject to the authority and approval of Circuit Court No. 2 of Baltimore City.

In consideration of the above provisions, Rose Yake waived any claim that she might have against the appellee for alimony, other than that provided in the agreement, in the event of a decree of divorce or annulment of said marriage. It was further agreed that the provisions of the agreement be incorporated in any such decree. The validity of this contract and its enforcement, according to its terms, against any insurance of or allotment made by the federal government to the appellee, is the question presented by this appeal.

This question brings into consideration section 22 of the World War Veterans' Act 1924, 38 U. S. Code Ann. sec. 454, relating to assignments of compensation and allowances for support, which provides: "The compensation, insurance, and maintenance and support allowance payable under Parts II, III, and IV, respectively, shall not be assignable; shall not be subject to the claims of creditors of any person to whom an award is made under Parts II, III, or IV; and shall be exempt from all taxation. Such compensation, insurance, and maintenance and support allowance shall be subject to any claims which the United States may have, under Parts II, III, IV, and V, against the person on whose account the compensation, insurance, or maintenance and support allowance is payable."

The manifest intention of Congress in incorporating this provision in this act was to guard those unfortunates who had been disabled in the service of their country from imposition of others or the depletion of their maintenance and support by their own improvidence, and to assure to them a certain subsistence. In the broad terms of the statute above quoted, it was manifestly intended to accomplish this definite purpose. The statute should

be construed broadly in favor of disabled soldiers in order that the purpose and intent of the act might be fulfilled.

We have here an agreement whereby Rose Yake, or Rose Harris, shall receive one-third of his allotment so long as she shall live and remain unmarried. As a basis of this claim is the pretended marriage of these parties, which in a few days after the consummation of the agreement was annulled by a decree of the court, and it appears from the recitations in the preamble of the agreement that it was made in contemplation of an annulment or a decree of divorce. It ought to be stated here that alimony is not an incident to, and cannot be predicated upon, or granted in consequence of, an annulment of marriage. 2 *Bishop on Marriage, Divorce and Separation,* sec 855.

An independent agreement between the parties, such as this, even though recognized in the decree and stipulated that it shall be regarded as alimony, cannot be accepted as such. *Dickey v. Dickey,* 154 Md. 675, 141 A. 387, and cases cited.

The question now presented is whether the agreement in effect is an assignment of this disabled soldier's compensation granted to him by the federal government, or is it merely a contract for the payment of money, creating an obligation upon which a suit at law might be brought. If the latter, no citation for contempt could be had for failure to pay the sums of money named in the contract, even though incorporated in the degree of annulment in its terms. This court has decided that contractual obligations for the payment of money cannot be so enforced by courts of equity, for such a procedure might eventually result in an imprisonment for debt.

The very purpose of the Act of Congress, imposing a prohibition on assignments of the compensation awarded to disabled soldiers, justifies a broad construction when necessary to satisfy the spirit of the act and to accomplish its laudable designs. For the purpose of this case "assignment" should be defined as, "an allotting or apportionment to a particular person or use or for a particular time" of title or interest in property, *Webster's Dictionary*

(New International 1929), or, as defined in 2 *R.C.L.* 593, "an assignment in law is a transfer or setting over of property, or of some right or interest therein, from one person to another."

It is clear that this agreement has the same effect as though it were an assignment in verbiage and terms. If Edward J. Yake had employed the words, "I hereby assign thirty per cent. of my compensation or insurance to Rose Harris so long as she lives or remains unmarried," it could have no other or different effect than that of the language employed in the agreement. The purpose of the agreement was to transfer, without revocation, a certain part of his compensation, and this assignment was made in anticipation of the sums of money that would be coming to him through his committee or guardian. In our opinion this is what the federal statute intended to prevent.

The provisions of the entire statute, Title 38 U. S. Code Ann., deals with "Pensions, Bonuses and Veterans' Relief." The obvious purpose of these provisions is to afford a continuous support and maintenance of those who have suffered because of their military service. The very terms employed, such as pensions, compensation, insurance, maintenance, and support allowances, paid, as in this case and in most instances, by installments extending over a period of time and through guardians or trustees, show the object and purpose to be that above stated. This conclusion is further supported by those statutory provisions and guarantees with which these bounties of the government are surrounded and vouchsafed to those persons for whom they are intended. These conclusions are further fortified by the obvious solicitude of the government lest these allowances be dissipated or diverted to uses other than that of continuous maintenance and support.

The statute not only prohibits assignments, but protects the compensation, allowance, or relief, from claims of creditors, and from taxes. Protective statutes of such a character, and benefits so guarded, clearly show a legislative policy to provide uninterrupted support, but that

purpose would be defeated by subjecting these allowances to debts or taxes, or by assignments of them.

It is the law of this state that statutes should be so construed as to carry out, and to effectuate or aid in the general purposes and policies of, the legislation in question. *Byrne v. Gunning*, 75 Md. 30, 35, 23 A. 1; *American Casualty Ins. Company's* Case, 82 Md. 535, 34 A. 778; *Commercial Bldg. & Loan Assn. v. Mackenzie*, 85 Md. 132, 36 A. 754; *Stewart v. Gorter*, 70 Md. 242, 16 A. 644; *Swan v. Kemp*, 97 Md. 686, 55 A. 441. It is therefore our opinion that the provisions of the statute in question should be so construed as to effectually prevent the disposition of the soldiers' compensation or relief by such means, or in such manner, as the said agreement undertakes to do. If this purpose could be so accomplished, then the obvious legislative policy of the government could be entirely subverted or destroyed by an agreement or series of agreements, such as the one in question. This we cannot sanction.

According to the decree of annulment, and the testimony contained in the record, the appellee went through a marriage ceremony with the appellant, but did not know, or could not understand, the nature and effect of what he was doing, because of his injuries. In order to effect a cure of his malady, he was confined in asylums and hospitals for a long time after his alleged marriage. Fortunately he seems to have regained his understanding. He then set about to obtain a divorce or an annulment of his alleged marriage, into which he had entered so improvidently, and of which he became informed only after he regained his memory and understanding.

Under all the facts and circumstances presented in this case, the claim that this unfortunate man was guilty of laches in bringing this suit is not well founded. From what we have said as to the conclusions reached, the decree must be affirmed.

*Decree affirmed, costs to be paid by appellant.*

OFFUTT, PARKE, and JOHNSON, JJ., dissent.