520 S.E.2d 339

**Marian Kay SMITH, Appellant/Respondent,**

**v.**

**The SOUTH CAROLINA RETIREMENT SYSTEM, Respondent,**

**Elena P. Smith, Respondent/Appellant.**

No. 3025.

Court of Appeals of South Carolina.

Submitted June 8, 1999.

Decided July 6, 1999.

Rehearing Denied Sept. 11, 1999.

508

510

G. Dana Sinkler and Andrea H. Duenas, both of Warren & Sinkler, of Charleston, for appellant/respondent.

Ray P. McClain and Margaret D. Fabri, both of Charleston, for respondent/appellant.

Stephen R. Van Camp and Nancy E. Shealy, both of South Carolina Retirement System, of Columbia, for respondent.

ANDERSON, Judge:

Marian Smith appeals the trial court's dismissal of her declaratory judgment action against the South Carolina Retirement System. Elena Smith filed a cross-appeal, asserting the trial court erred (1) in refusing to dismiss Marian Smith's claim for constructive trust and (2) in failing to dismiss the declaratory judgment action with prejudice. We affirm the trial court's dismissal of the declaratory judgment action without prejudice and reverse the trial court's refusal to dismiss the constructive trust claim.[1]

## *FACTS/PROCEDURAL BACKGROUND*

Marian Kay Smith (former Wife) and William Allen Smith (Husband) were married May 28, 1955, and separated in September 1972. Husband accepted a professorship at the Medical University of South Carolina on July 15, 1973, and thereby enrolled in the South Carolina Retirement System (SCRS). In April 1975, the parties executed a Separation Agreement whereby Husband, in lieu of paying alimony or other periodic spousal support, agreed to maintain former Wife as beneficiary of his pre-retirement death benefits from SCRS. The relevant language, found in Article IV, section D, of the Separation Agreement is:

> By letter dated April 24, 1975, Husband notified the South Carolina Retirement Systems [sic] of his intention to retain (post-divorce) Wife as beneficiary under his pre-retirement death benefit program. A copy of said letter is attached as "Exhibit A." Husband agrees that this request shall not be changed until his death or remarriage of the Wife.

This notarized letter states:

> This letter is to request that you note in the records of the South Carolina Retirement System my desire to name:

---

[1]. Because oral argument would not aid the Court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

Marian Kay Smith, 357 Wesley Drive, Chapel Hill, North Carolina 27514 as beneficiary of all my benefits under the "Pre–Retirement Death Benefit Program" and the "Refund of Contribution upon Death". This request is made at this time to reaffirm Marian Kay Smith as my beneficiary despite my marital divorce from her.

According to Article IX of the Separation Agreement:

The Wife acknowledges that the provisions herein set out are fair, adequate and reasonable, and satisfactory to her. Accordingly, she accepts the same in lieu of and in full and final settlement and satisfaction of any and all claims and rights that she may now or hereafter have against the Husband for her support and maintenance and for the support, maintenance and education of the Children.

The parties were divorced June 17, 1975, with the divorce decree incorporating the Separation Agreement as part of the judgment. Neither the Separation Agreement nor the order granting the divorce were forwarded to SCRS.

On February 25, 1977, Husband married Elena P. Smith (Widow). Subsequently, in 1985, without former Wife's knowledge or accession, Husband changed the designated beneficiary of his "Refund of Contribution upon Death" from former Wife to his son. He substituted Widow as beneficiary of his "Pre–Retirement Death Benefit Program." On July 15, 1994, Husband wrote a letter to former Wife asking her to relinquish her claim to these benefits, and Included a copy of a release for her signature. Former Wife, however, did not sign the release or respond to Husband's request. Then, in 1996, Husband replaced his son with Widow as beneficiary of the post-mortem contributions refund. Thus, in March, 1997, when Husband died prior to retirement, Widow remained as the sole statutorily-designated beneficiary of all pre-retirement death benefits.

Former Wife notified SCRS of her claim to Husband's benefits on April 14, 1997. On April 25, she filed a complaint against SCRS and Widow in federal district court. After SCRS pled Eleventh Amendment immunity as a defense, however, former Wife took a voluntary dismissal on July 10. The next day, former Wife instituted a declaratory judgment action against SCRS in the Circuit Court of Charleston Coun-

ty seeking an order entitling her to Husband's pre-retirement death benefits.[2] This complaint was amended on August 15, adding (1) Widow as a necessary party and (2) former Wife's alternative claim for constructive trust. Widow answered and counterclaimed for interest, costs, and attorney's fees. In addition, both defendants moved for dismissal, asserting, among other things, former Wife neglected to follow statutory procedure as outlined by S.C. Annotated §§ 9–18–10 *et seq.*, and thereby failed to exhaust her administrative remedies as required therein.

The trial court held a motions hearing on December 4, 1997, and subsequently entered a form judgment on February 6, 1998:

> Having considered the briefs and arguments of counsel, as well as the record herein, the motion of defendant S.C. Retirement System to dismiss for failure to exhaust administrative remedies is hereby granted. The motion to dismiss by defendant Smith as to the constructive trust cause of action is hereby denied; any issue as to the relationship between the decedent and the plaintiff and their alleged agreement are not properly resolved at this stage of the proceedings. Provided, however, the court finds that this claim should be stayed pending exhaustion of any administrative remedies or until further order of this court.

Former Wife appeals from the denial of her motion for reconsideration, arguing the trial court erred in granting SCRS's motion to dismiss the declaratory judgment action for failure to exhaust administrative remedies. In addition, Widow cross-appeals the denial of her motion to dismiss former Wife's constructive trust claim.

## LAW/ANALYSIS

### I. Application of §§ 9–18–10 *et seq.* to Prior Divorce Orders

#### A. Retroactive Application

█ Former Wife contends the statutory scheme requiring exhaustion of administrative remedies, S.C.Code Ann. §§ 9–

---

2. A separate, alternative action for breach of contract was also filed against Husband's estate.

18–10 *et seq.*, entitled "Qualified Domestic Relations Orders" (QDRO statute), does not apply to domestic relations orders entered prior to its enactment. We disagree.

> South Carolina Code Ann. § 9–18–20 (Supp.1998) provides: (A) Sections 9–1–1680,9–8–190, 9–9–180, or 9–11–270 apply to the creation, assignment, recognition, or enforcement of a right to any benefit payable under a retirement system with respect to a member or retired member pursuant to a domestic relations order unless the order is determined to be a qualified domestic relations order. A qualified domestic relations order may order that all or any part of any (1) retirement benefit, (2) withdrawal or refund of contributions, (3) disability benefit, or (4) death benefit that becomes payable under the retirement system on account of the member or retired member, instead be paid by the system to the alternate payee. No other benefits provided under the retirement system may be paid to an alternate payee. A domestic relations order constitutes a qualified domestic relations order if it orders the payment of only those types of benefits described in clauses (1) through (4) of this subsection and meets the requirements set forth in subsection (B).[3]

Former Wife claims the statute does not apply to her 1975 North Carolina domestic relations order, because it was enacted in 1995, some twenty years after her divorce. Essentially, former Wife contends the absence of specific statutory language regarding domestic relations orders entered prior to the creation of qualified domestic relations orders in 1984,[4]

---

**3.** The QDRO statutory scheme defines "domestic relations order" as "any judgment, decree, or order, including approval of a property settlement agreement, which relates to the provision of alimony payments or marital property rights to a spouse or former spouse of a member or retired member, and is made pursuant to a domestic relations law, including a law of this State or of another state." Alternatively, a QDRO is "a domestic relations order which creates or recognizes the existence of an alternate payee's right, or assigns to an alternate payee the right, to receive all or a portion of a benefit payable with respect to a member or retired member under a retirement system, which directs that retirement system to disburse benefits to the alternate payee, and which meets the requirements of this chapter." S.C.Code Ann. § 9–18–10(6) and (9) (Supp.1998).

**4.** Qualified Domestic Relations Orders were first established by the federal Retirement Equity Act of 1984(REA), an amendment to the

except for those "accepted" by the retirement systems prior to July 1, 1995, pursuant to S.C.Code Ann. § 9–18–100, precludes application of the statute in this instance. In addition, former Wife maintains general rules of statutory construction hold statutes operate prospectively absent specific statutory provisions or clear legislative intent to the contrary.

In the construction of statutes there is a presumption that statutory enactments are to be considered prospective rather than retroactive in their operation unless there is a specific provision or clear legislative intent to the contrary. *Hyder v. Jones*, 271 S.C. 85, 245 S.E.2d 123 (1978). SCRS's QDRO statute, however, is remedial. *See King v. S.C. Retirement Sys.*, 319 S.C. 373, 461 S.E.2d 822 (1995). An exception to the prospectivity presumption therefore applies. Statutes that are remedial or procedural in nature are generally held to operate retrospectively. *See Merchants Mut. Ins. Co. v. South Carolina Second Injury Fund*, 277 S.C. 604, 291 S.E.2d 667 (1982); *Hercules, Inc. v. South Carolina Tax Comm'n*, 274 S.C. 137, 262 S.E.2d 45 (1980) (statutes affecting the remedy, not the right, are generally retrospective). Clearly, the QDRO statute's express procedure for qualifying a domestic relations order falls within this exception. Moreover, former Wife's argument ignores the fact that retroactivity is contemplated by the statute itself. Though the statutory language does not expressly state the statute's retroactive nature, at least two statutory provisions undoubtedly presume it.

Section 9–18–30(B) provides a remedy for those orders not determined to be qualified domestic relations orders:

If the order is determined not to be a qualified domestic relations order, the member or retired member or alternate payee named in the order may appeal the administrator's determination in the manner specified in subsection (A) of this section *and may petition the court which issued the order to amend the order so that it will be qualified. The court which issued the order or which would otherwise have jurisdiction over the matter has jurisdiction to amend the order so that it will be qualified even though all other*

Employee Retirement Income Security Act of 1974 (ERISA). *See* 29 U.S.C. § 1056(d)(1), (3); Pub.L. 98–397, 98 Stat. 1426.

*matters incident to the action or proceeding have been fully, and finally adjudicated.*

S.C.Code Ann. § 9–18–30(B) (Supp.1998) (emphasis added). In our view, such language anticipated the need for a mechanism to qualify orders issued prior to enactment of the statute. Furthermore, § 9–18–100 indicates the legislature's intent that the statute apply to pre-enactment orders:

A domestic relations order accepted by the retirement system before July 1, 1995, must be administered by the retirement system in accordance with the provisions of the order and must not be rereviewed by the system for compliance with Section 9–18–20 unless the system is requested to do so by the court having jurisdiction over the matter. The retirement system, however, in its sole discretion, may require that any amendment of an accepted order that is received after June 30, 1995 meet the requirements of Section 9–18–20. For purposes of this section, an order is an "accepted order" only if the retirement system provided before July 1, 1995, written notice of its acceptance of the order to the member or retired member, and the alternate payee.

S.C.Code Ann. § 9–18–100 (Supp.1998). Taking the two statutes together, it is clear an order issued prior to enactment of the statute would still be viable as a directive to SCRS to distribute retirement benefits to an alternate payee, if it meets either the requirements of § 9–18–100 or is amended pursuant to § 9–18–30(B), *supra*. We therefore conclude the QDRO statutory scheme applies to former Wife's 1975 domestic relations order. Accordingly, former Wife is required to submit the order to SCRS for a determination of its effect.

## B. Common Law Exception

 SCRS has exclusive jurisdiction to determine the effect of a domestic relations order which purports to assign retirement benefits to an alternate payee,[5] as set forth in § 9–18–30:

---

5. An "alternate payee" is defined as "a spouse or former spouse of a member or retired member who is recognized by a domestic relations order as having a right to receive all or a portion of the benefits payable by a retirement system with respect to such member or retired member." S.C.Code Ann. § 9–18–10(2) (Supp.1998).

(A) The administrator of the retirement system or his designee has exclusive authority to determine whether or not a domestic relations order is a qualified domestic relations order....;

....

(H) A court does not have jurisdiction over a retirement system with respect to a divorce or other domestic relations action in which an alternate payee's right to receive all or a portion of the benefits payable to a member or retired member under the retirement system is created or established....

S.C.Code Ann. § 9–18–30(A) and (H) (Supp.1998). In addition, § 9–18–20(A), supra, specifically states that SCRS's anti-alienation provision, § 9–1–1680, applies if a domestic relations order is not qualified. Section 9–1–1680 reads:

The right of a person to an annuity or a retirement allowance or to the return of contributions, an annuity, or retirement allowance itself, any optional benefit, or any other right accrued or accruing to any person under the provisions of this chapter, and the monies of the system created under the provisions of this chapter or any private retirement system operated by a municipality, are exempted from any state or municipal tax, except the taxes imposed pursuant to Chapters 7, 15, and 16 of Title 12, and exempted from levy and sale, garnishment, attachment or any other process *and are unassignable except as specifically otherwise provided in this chapter.* (emphasis added)

S.C.Code Ann. § 9–1–1680 (1985 & Supp.1998). Former Wife claims, however, this statutory section does not apply to the underlying domestic relations order. According to former Wife, her right to Husband's pre-retirement death benefits must be determined by the law in effect on the date of the North Carolina judgment. We disagree.

Former Wife's argument is based erroneously on her belief a common law exception exists which precludes the application of § 9–1–1680 in these circumstances. Specifically, former Wife relies on case law, both federal and state, decided in the years following passage of the Employee Retirement Income Security Act of 1974 (ERISA), which interprets ERISA's identical anti-alienation clause. Under this post-ERISA law,

she avers, a majority of courts implied a judicial exception to ERISA's general ban on the assignment of certain benefits, for "domestic relation decrees authorizing the transfer of retirement benefits in satisfaction of support obligations."

By its own terms, ERISA does not apply to governmental retirement plans. 29 U.S.C. §§ 1002(32), 1003(b)(1) and 1056(d). Therefore, the anti-alienation provision asserted by SCRS, a public retirement system governed by state statutory law, does not fall within the purview of federal statutory interpretation.[6] Second, former Wife's contention fails to consider the impact on such cases of the Retirement Equity Act of 1984(REA), which created qualified domestic relations orders, and subsequent judicial interpretations. Recently, in *Boggs v. Boggs*, 520 U.S. 833, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997) the United States Supreme Court explicitly rejected former Wife's view:

> The pre-REA federal common-law extension of § 1002(8)'s definition of "beneficiary" by courts in the context of marital dissolution was in part based on an apparent appreciation of the fact that domestic relations law is primarily an area of state concern, ... and the basic principle that a beneficiary's interest in a spendthrift trust, despite otherwise applicable protections, can be reached in the context of divorce and separation.... Whether or not this extension of the definition of "beneficiary" was consistent with the statute then in force, these authorities are not applicable in light of the REA amendments. The QDRO and the surviving spouse annuity provisions define the scope of a nonparticipant spouse's community property interests in pension plans consistent with ERISA....

---

**6.** Former Wife also asserts, without supporting authority, that the applicability of § 9–1–1680 is subject to judicial interpretation under the Internal Revenue Service Code, by alleging that § 9–1–1680 reflects the State's adoption of an identical anti-alienation provision found in 26 U.S.C. § 401(a)(13) in order to qualify its retirement plan for tax-exempt status. As a governmental retirement plan pursuant to 26 U.S.C. § 414(d), however, SCRS's tax-exempt status does not depend on compliance with § 401(a)(13). *See* Treas.Reg. § 1.401(a)–(13)(a). Furthermore, § 9–1–1680 was included in the original Code section establishing the SCRS in 1945, while SCRS did not defer contributions for tax purposes until 1982. S.C.Code Ann. § 9–1–1680 (1985 & Supp.1998).

. . . .

. . . . The conclusion that Congress intended to pre-empt respondents' nonbeneficiary, nonparticipant interests in the retirement plans is given specific and powerful reinforcement by the pension plan anti-alienation provision. . . . Statutory anti-alienation provisions are potent mechanisms to prevent the dissipation of funds. . . . ERISA's pension plan anti-alienation provision is mandatory and contains only two explicit exceptions . . . *which are not subject to judicial expansion.* (citations omitted) (emphasis added)

*Boggs,* 520 U.S. at 849–51, 117 S.Ct. 1754. Federal law, therefore, is inapplicable to the case at bar because it permits only two *statutory* exceptions, and none under the common law.

Though not directly applicable, federal law is instructive in this instance. As the Court related in *Boggs,* the anti-alienation provision can "be seen to bespeak a pension law protective policy of special intensity: Retirement funds shall remain inviolate until retirement." *Id.* (quoting J. Langbein and B. Wolk, *Pension and Employee Benefit Law* 547 (2d ed.1995)). QDROs, however, are the law's recognition that, in some circumstances, this restriction on retirement funds must give way to a competing interest; hence, the Court's conclusion: "QDRO provisions protect those persons who, often as a result of divorce, might not receive the benefits they otherwise would have had available during their retirement as a means of income." *Boggs,* 520 U.S. at 854, 117 S.Ct. 1754. In *Lloyd v. Lloyd,* 295 S.C. 55, 367 S.E.2d 153 (1988), our Supreme Court upheld the Family Court's garnishment of a divorced husband's SCRS account despite the language contained in § 9–1–1680 exempting retirement funds from "levy and sale, garnishment, attachment, or any other process. . . ." S.C.Code Ann. § 9–1–1680 (1985 & Supp.1998).

As here, the divorce decree in *Lloyd* incorporated a separation agreement between the parties, whereby the husband agreed: (1) the wife would remain the beneficiary of his state retirement account unless she remarried; and (2) not to interfere with the wife's interest in the account. When the husband quit paying the wife support, quit his state job, and attempted to withdraw his retirement funds, the wife obtained

an injunction and the Family Court ordered the State to disburse the husband's retirement funds to wife for support arrearages. On appeal, the Supreme Court held S.C.Code Ann. § 20–7–1315, enacted in 1985 and specifically authorizing garnishment to enforce support obligations, prevailed over § 9–1–1680, a less specific statute passed in 1945. In so doing, however, the Court implicitly rejected former Wife's assertion § 9–1–1680 does not apply to domestic relations orders entered into prior to enactment of the QDRO statute in 1995.

In addition, the Court's opinion in *Lloyd* impliedly disavowed any "common law exception" to the application of § 9–1–1680. By limiting its holding such that § 20–7–1315 only authorized garnishment of statutorily-defined "payments," the Court implied that no common law exception existed which would have allowed the wife to reach the husband's retirement account without benefit of the statutory exception. Moreover, nothing in *Lloyd* proscribes application of the present QDRO statute to domestic relations orders. Indeed, we believe the order at issue in *Lloyd,* decided seven years prior to enactment of the QDRO statute, would today be subject to its requirements.

### C. Domestic Relations Order as an Assignment

■ Lastly, former Wife argues the domestic relations order at issue does not constitute an assignment within the meaning of § 9–1–1680, but was merely an irrevocable designation of the statutory beneficiary pursuant to § 9–1–1770 (Pre–Retirement Death Benefit Program) and § 9–1–1650 (Refund of Contribution upon Death). She maintains § 9–1–1680 would not apply to the domestic relations order and would allow her recovery. We disagree.

The statute does not contain an express provision granting an absolute right to change the beneficiary. However, § 9–1–1650 declares:

Should a member die before retirement, the amount of his accumulated contributions shall be paid to his estate or to such person as he shall have nominated by written designation, duly acknowledged and filed with the board.

No limit is placed on the number of times a beneficiary may be changed, nor does it state a beneficiary can be designated only once. Section 9–1–1770 provides that benefits "must be paid to the person he nominated for the refund of his accumulated contributions in the event of his death pursuant to § 9–1–1650."

Since the statutes contemplate the change of a beneficiary, we must now determine if the divorce order in which former Wife is irrevocably designated as a beneficiary is valid, or if Husband remained free to change the beneficiary. Widow avers the irrevocable designation is barred by the anti-alienation statute. Former Wife contends § 9–1–1680 does not prohibit an irrevocable designation, but only levy, garnishment, attachment, or assignment. According to § 9–1–1680:

> The right of a person to an annuity or a retirement allowance or to the return of contributions, an annuity, or retirement allowance itself, any optional benefit, or any other right accrued or accruing to any person under the provisions of this chapter, and the monies of the system created under the provisions of this chapter or any private retirement system operated by a municipality, are exempted from any state or municipal tax, except the taxes imposed pursuant to Chapters 7, 15, and 16 of Title 12, and exempted from levy and sale, garnishment, attachment *or any other process* and are unassignable except as specifically otherwise provided in this chapter. (emphasis added)

S.C.Code Ann. § 9–1–1680 (Supp.1998).

 Entitlement to State retirement benefits is purely statutory. *Anderson v. South Carolina Retirement System*, 278 S.C. 161, 293 S.E.2d 312 (1982). These benefits are statutorily exempted from any process such as assignment, garnishment, or levy except as provided in the statutes. S.C.Code Ann. § 9–1–1680 (Supp.1998).

South Carolina has not had occasion to consider whether an irrevocable designation of a beneficiary is analogous to an assignment and therefore invalid under the anti-alienation statute. Other states have considered the question in regard to a National Service Life Insurance policy or a War Risk Insurance policy. In *Williams v. Williams*, 255 N.C. 315, 121 S.E.2d 536 (1961), the North Carolina Supreme Court deter-

mined an irrevocable designation of a beneficiary was in effect an assignment of the proceeds of the policy and therefore invalid. The Court explicated:

In *Kauffman v. Kauffman*, 93 Cal.App.2d 808, 210 P.2d 29, 33, Gertrude A. Kauffman and her husband, Barton H. Kauffman, entered into a separation agreement and property settlement on 27 August 1941. It was agreed between the parties that the wife should remain the beneficiary in the husband's War Risk Insurance policy, but if they should be divorced it was agreed that their two children should be named beneficiaries. Gertrude A. Kauffman secured a final divorce decree from Barton H. Kauffman on 20 October 1942. The children were named beneficiaries in the insurance policy as provided in the separation agreement. However, on 20 November 1942, Barton H. Kauffman married Angie F. Kauffman and on 20 October 1947 the insured changed the beneficiary in his policy to his second wife. The insured died on 28 February 1948. An action was instituted to impress a trust upon the proceeds of the policy. The Court held: 'We conclude that the property settlement agreement was an assignment of the proceeds of the policy in question, *Chilwell v. Chilwell*, 40 Cal.App.2d 550, 553, 105 P.2d 122; that such an assignment is prohibited by the terms of the Federal Statute, s 454a, supra (now 38 U.S.C.A. s 3101), and is therefore not enforceable against the defendant beneficiary. *Lewis v. United States*, 3 Cir., 56 F.2d 563; *Von Der Lippi–Lipski v. United States*, 55 App.D.C. 202, 4 F.2d 168; *Bradley v. United States*, 10 Cir., 143 F.2d 573; *Tompkins v. Tompkins*, 132 N.J.L. 217, 38 A.2d 890; *Yake v. Yake*, 170 Md. 75, 183 A. 555; *Robertson v. McSpadden*, D.C., 46 F.2d 702; *United States v. Williams*, 302 U.S. 46, 50, 58 S.Ct. 81, 82 L.Ed. 39.'

*Williams*, 121 S.E.2d at 539.

*Williams* and *Kauffman* involved statutorily created insurance policies. The statutes contained anti-alienation provisions which prohibited the assignment of proceeds under the policy. As here, a divorce order required the former wife be irrevocably designated as the beneficiary of the policies.

If a person is allowed to irrevocably designate another as their beneficiary, it has the same effect as making an assign-

ment. A member of the retirement system may irrevocably designate a creditor as a beneficiary in order to provide collateral or qualify for a loan. If the creditor can then enforce this designation, the creditor and member have effectually emasculated the statute. Apodictically, a process as similar to assignment as an irrevocable designation is prohibited under the "any other process" clause of the statute.

■ We conclude an irrevocable designation of a beneficiary is akin to an assignment. Under our statute, retirement benefits can not be restricted by "any other process" except as statutorily defined. An irrevocable designation of a beneficiary is therefore voided by the anti-alienation provisions of § 9–1–1680.

## II. Exhaustion of Remedies

### A. Administrative Procedure

■ Since we find former Wife's domestic relations order is covered by the QDRO statutory scheme, we now determine whether former Wife is required to exhaust the administrative remedy stated therein.

■ The question of whether exhaustion of administrative remedies is required is a matter within the sound discretion of the trial court that will not be disturbed on appeal absent an abuse of that discretion. *Stanton v. Town of Pawley's Island,* 309 S.C. 126, 420 S.E.2d 502 (1992). An abuse of discretion occurs where the trial court is controlled by an error of law or where the Court's order is based on factual conclusions without evidentiary support. *Id.; Coleman v. Dunlap,* 306 S.C. 491, 413 S.E.2d 15 (1992). Section 9–18–30 provides as follows:

(A) The administrator of the retirement system or his designee has *exclusive authority* to determine whether or not a domestic relations order is a qualified domestic relations order. For purposes of this chapter only, the administrator of the retirement system or his designee is considered a single hearing officer within the meaning of Section 1–23–600(B) and, as such, appeals from their determination are to the Administrative Law Judge Division under its applicable procedures.

(B) The administrator of the retirement system or his designee upon receipt of a certified copy of a domestic relations order, shall determine whether the order is a qualified domestic relations order and shall notify the member or retired member and the alternate payee of the determination. If the order is determined to be a qualified domestic relations order, the retirement system shall pay benefits in accordance with the order. If the order is determined not to be a qualified domestic relations order, the member or retired member or alternate payee named in the order *may appeal the administrator's determination in the manner specified in subsection (A) of this section* and may petition the court which issued the order to amend the order so that it will be qualified. (emphasis added)

S.C.Code Ann. § 9–18–30(A) (Supp.1998). Furthermore, subsection (H) reaffirms the exclusive jurisdiction of the SCRS:

(H) A court *does not have jurisdiction* over a retirement system with respect to a divorce or other domestic relations action in which an alternate payee's right to receive all or a portion of the benefits payable to a member or retired member under the retirement system is created or established. (emphasis added)

S.C.Code Ann. § 9–18–30(H) (Supp.1998).

■ These sections articulate the administrative procedure for obtaining payment from SCRS pursuant to a domestic relations order. Absent a determination by the retirement system administrator or designee that an order is a qualified domestic relations order, the rights of a member to his benefits cannot be assigned or transferred. S.C.Code Ann. §§ 9–18–20(A) and 9–1–1680 (1985 & Supp.1998). Logic, therefore, dictates the statutory scheme must be followed. *See MUSC v. Taylor,* 294 S.C. 99, 362 S.E.2d 881 (Ct.App. 1987) (presentation of legal issues to administrative agency vested with primary jurisdiction required when no good reason is advanced as to why issue should not have been determined in the manner prescribed by statute).

### B. Futility or Inadequacy

■ The Supreme Court has held exhaustion of administrative remedies generally is required absent circumstances

excusing application of the general rule. *Hyde v. S.C. Dep't of Mental Health,* 314 S.C. 207, 442 S.E.2d 582 (1994). In *Hyde,* the Court declared: "[a] trial judge must have a sound basis for excusing the failure to exhaust administrative relief." *Id.* at 209, 442 S.E.2d at 583. Here, former Wife avers that she is excused from the exhaustion requirement due to the "futility" or "inadequacy" of administrative remedies. It is undisputed that former Wife's current domestic relations order is not a qualified domestic relations order.

In addition, given the statutory requirements for qualification of a domestic relations order, it is unlikely former Wife's order can be qualified absent amendment by the issuing court.[7] Accordingly, former Wife claims that any attempt by

7. South Carolina Code Ann. § 9–18–20 sets forth the requirements for qualification:

(B) A domestic relations order is a qualified domestic relations order only if the order:

(1) clearly specifies the retirement system to which it applies;

(2) clearly specifies the name, social security number, and last known mailing address of the member or retired member and the name, social security number, and mailing address of the alternate payee covered by the order, and states the date of marriage;

(3) clearly specifies the types of benefits described in subsection (A) to which the order applies;

(4) clearly specifies the amount or percentage of each benefit to be paid by the retirement system to the alternate payee or the manner in which the amount or percentage is to be determined;

(5) clearly specifies the number of payments or the period to which the order applies;

(6) clearly specifies whether the alternate payee is to share proportionately in benefit increases due to cost-of-living adjustments;

(7) does not require the retirement system to pay any benefit at a time or in an amount that would not otherwise have been payable at the time or in such an amount;

(8) does not require the retirement system to provide any benefit or option not otherwise provided under the provisions of law governing the system;

(9) does not require the retirement system to provide the alternate payee optional payment forms;

(10) does not require the retirement system to provide increased benefits determined on the basis of actuarial value;

(11) does not require the payment of benefits to the alternate payee which is required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order;

(12) does not require the payment of benefits to the alternate payee before the retirement of a member, the distribution of a withdrawal

her to submit the order for administrative review would be futile. In effect, former Wife argues no adequate administrative remedy exists to exhaust. We disagree.

 The rule of exhaustion is subject to exceptions. *See Andrews Bearing Corp. v. Brady*, 261 S.C. 533, 201 S.E.2d 241 (1973); *Ex parte Allstate Ins. Co.*, 248 S.C. 550, 151 S.E.2d 849 (1966). "A general exception to the requirement of exhaustion of administrative remedies exists when a party demonstrates that a pursuit of them would be a vain or futile act." *Moore v. Sumter County Council*, 300 S.C. 270, 273–74, 387 S.E.2d 455, 458 (1990) (citing 82 Am.Jur.2d *Zoning and Planning* § 332 at 903 (1976)). Futility, however, must be demonstrated by a showing comparable to the administrative agency taking "a hard and fast position that [makes] an adverse ruling a certainty." *Thetford Properties IV Ltd. Partnership v. U.S. Dep't of Housing and Urban Development*, 907 F.2d 445, 450 (4th Cir.1990). Thus, former Wife's belief, even with

---

of contributions to a member, or other distribution to a member, retired member, or beneficiary;

(13) does not require that the alternate payee be provided the right to designate a beneficiary to receive benefits after the alternate payee's death;

(14) does not require that a member, retired member, or beneficiary elect a particular optional payment form or make any other election, except for the designation of the alternate payee as a recipient of death benefits; and

(15) does not require a member to terminate employment, to withdraw contributions, or to apply for retirement.

(C) The retirement system may reject a domestic relations order as a qualified domestic relations order if the order:

(1) does not provide for a proportional reduction of the amount awarded to the alternate payee if payment of benefits commences before the member attains normal retirement age;

(2) does not provide clearly for each possible benefit distribution permitted under the provisions of the retirement system;

(3) requires any action on the part of the retirement system that is contrary to any provision of law;

(4) makes the award of an interest contingent on any condition other than those conditions resulting in the liability of the retirement system for payments under its provisions;

(5) awards any future benefit increases that are provided or required by law, other than ordinary cost-of-living adjustments; or

(6) does not provide for a proportional reduction of the amount awarded to the alternate payee if benefits available to the member or retired member are reduced by law.

S.C.Code Ann. § 9–18–20(B) and (C) (Supp.1998).

good reason, that SCRS will reject her claim, does not establish futility as a basis for excusing exhaustion in the absence of a definitive statement by the agency administrator. *See, e.g., Garris v. Governing Bd. of South Carolina Reinsurance Facility*, 319 S.C. 388, 390, 461 S.E.2d 819, 821 (1995) (holding license holder did not meet burden of "showing that a final agency decision [would] not provide an adequate remedy," even where the hearing board had issued a Rule to Show Cause seeking to revoke the license at issue); *Stanton v. Town of Pawley's Island*, 309 S.C. 126, 128, 420 S.E.2d 502, 503 (1992) (rejecting futility claim by plaintiff denied building permit to rebuild after a hurricane based on Adjustment Board's denial of another owner's identical claim, because "Stanton could not be sure what the Board would rule").

Former Wife never submitted the domestic relations order to SCRS for review. SCRS has not had an opportunity to rule on whether the order would be accepted as a qualified domestic relations order, but has agreed to review former Wife's domestic relations order once it is submitted. It would be speculative for this Court to try to determine the outcome of an administrative hearing. "To allow appellants to avoid the administrative process on their unsupported allegation of futility would allow the futility exception to swallow the exhaustion rule." *Thetford Properties, supra.*

### C. Declaratory Judgment Actions

Finally, though Rule 57 of the South Carolina Rules of Civil Procedure governs declaratory judgment actions, and expressly provides: "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate," a court should not exercise such power lightly. *See* Rule 57, SCRCP; *MUSC v. Taylor*, 294 S.C. 99, 362 S.E.2d 881 (Ct.App.1987). Indeed, it is well settled a court ordinarily will refuse to grant a declaratory judgment where a special statutory remedy has been provided. "Gratuitous interference" in the administrative process should be avoided. *Williams Furniture Corp. v. Southern Coatings & Chemical Co.*, 216 S.C. 1, 7–8, 56 S.E.2d 576, 579 (1949). This Court, therefore, should not serve as a substitute for "a tribunal of original jurisdiction in issues that are ripe for litigation by the usual processes." *Id.* at 8, 56

S.E.2d at 579; *see also Garris,* 319 S.C. at 390, 461 S.E.2d at 821 ("Declaratory relief will ordinarily be refused where another remedy will be more effective or appropriate under the circumstances," as "[r]elief is not generally available to one who has not exhausted administrative remedies."). Additionally, because former Wife did not present the order in question to SCRS for review, there is no final order. In general, judicial review is appropriate only when appeal is from a final agency order. *Id.* at 388, 461 S.E.2d at 821 (citing S.C.Code Ann. § 1–23–380(A)).

In any event, if SCRS rules adversely on former Wife's order, she is always free to appeal to the Administrative Law Judge Division and eventually the Circuit Court. See S.C.Code Ann. § 9–18–30(A) (Supp.1998); *Wallace L. Blackmon, Jr., v. South Carolina Dep't of Ins.,* 1996 WL 909196 ALJD (finding S.C.Code Ann. § 9–18–30(A) added appellate jurisdiction in July 1995 in certain instances from the retirement system); *Bennett v. South Carolina Dep't of Corrections,* 305 S.C. 310, 408 S.E.2d 230 (1991) (statutory requirements proffering administrative remedy and requiring exhaustion before seeking judicial review mandate administrative agency has exclusive right to decide issues before it subject only to appeal for judicial review of its decision).

The record before us demonstrates former Wife could have presented the issue underlying her declaratory judgment action administratively. Former Wife cannot show (1) as a matter of law she was not required to exhaust her administrative remedies or (2) the trial court's ruling was based on unsupported facts. She has not established the trial court abused its discretion in dismissing her complaint. *See Stanton v. Town of Pawley's Island,* 309 S.C. 126, 420 S.E.2d 502 (1992). Accordingly, we hold former Wife must follow the procedures set forth in the QDRO statutory scheme to determine if the North Carolina judgment on which she bases her claim to Husband's pre-retirement death benefits meets the alternate payee requirements prescribed by South Carolina law.

## CROSS–APPEAL OF ELENA SMITH

Elena Smith (Widow) appeals the trial court's refusal to dismiss (1) former Wife's claim for constructive trust, and (2)

the declaratory judgment action with prejudice.[8]

## I. Constructive Trust

A constructive trust "arises entirely by operation of law without reference to any actual or supposed intentions of creating a trust." *McNair v. Rainsford,* 330 S.C. 332, 356, 499 S.E.2d 488, 501 (Ct.App.1998); *SSI Medical Servs., Inc. v. Cox,* 301 S.C. 493, 392 S.E.2d 789 (1990). In general, a constructive trust may be imposed when a party obtains a benefit "which does not equitably belong to him and which he cannot in good conscience retain or withhold from another who is beneficially entitled to it as where money has been paid by accident, mistake of fact, or fraud, or has been acquired through a breach of trust or the violation of a fiduciary duty." *SSI Medical Servs.,* 301 S.C. at 500, 392 S.E.2d at 793–94; *see also Dye v. Gainey,* 320 S.C. 65, 463 S.E.2d 97 (Ct.App.1995) (constructive trust results from fraud, bad faith, abuse of confidence, or violation of fiduciary duty which gives rise to obligation in equity to make restitution). Fraud is usually an element essential to the establishment of a constructive trust; though, it need not be actual fraud. *Lollis v. Lollis,* 291 S.C. 525, 354 S.E.2d 559 (1987); *McNair, supra.* Finally, the evidence must be clear and convincing to support its imposition. *SSI Medical Servs., supra.*

In her amended complaint, former Wife alleged Husband, acting in bad faith, committed fraud and breach of fiduciary duty in changing the statutory beneficiary of his SCRS pre-retirement death benefits to Widow, in direct contravention of their Separation Agreement. As a result, former Wife asked the trial court to impose a constructive trust on any SCRS benefits received by Widow as the designated beneficiary. Widow and SCRS, however, profess the imposition of such a trust is barred by the anti-alienation provisions of § 9–1–1680. We agree.

Widow, as Husband's statutorily-designated beneficiary of pre-death retirement benefits, is entitled to the protection afforded by § 9–1–1680, which prohibits assignment of retire-

---

8. We consider these issues without benefit of counter argument, as former Wife does not address either issue in her Response Brief of Appellant/Respondent.

ment benefits "except as specifically otherwise provided in this chapter." S.C.Code Ann. § 9–1–1680 (1985 & Supp.1998). This section clearly reflects a considered public policy to protect the retirement benefits of public employees and their beneficiaries. At present, the sole exception to the strictures of this section is the QDRO statutory scheme set forth in S.C.Code Ann. §§ 9–18–10 *et seq.*, which provides the exclusive mechanism for the assignment and transfer of SCRS benefits in divorce actions. *See* S.C.Code Ann. §§ 9–18–20 and 9–18–30 (Supp.1998). Absent qualification of former Wife's domestic relations order as a QDRO, SCRS's anti-alienation provision operates as a bar to any restriction on Husband's right to change his SCRS beneficiary. Former Wife, however, seeks to avoid this result through imposition of a constructive trust, in direct violation of § 9–1–1680, which protects beneficiaries from "garnishment, attachment, *or any other process*" which might diminish the benefits due them. S.C.Code Ann. § 9–1–1680 (Supp.1998) (emphasis added).

The courts of this state apparently have not addressed the question of whether fraud is committed when one exercises a statutory right to change a designated beneficiary that results in the abrogation of an otherwise valid divorce decree. Accordingly, we look to other jurisdictions for guidance. *Atlanta Skin & Cancer Clinic, P.C. v. Hallmark Gen. Partners, Inc.,* 320 S.C. 113, 463 S.E.2d 600 (1995) (federal courts' interpretations of corresponding federal law, though not binding, may be applied as guidance); *Stephen v. Avins Const. Co.,* 324 S.C. 334, 478 S.E.2d 74 (Ct.App.1996). In *Ridgway v. Ridgway,* 454 U.S. 46, 48, 102 S.Ct. 49, 51, 70 L.Ed.2d 39 (1981), an army sergeant's separation agreement, incorporated in the divorce decree, directed him to maintain life insurance "for the benefit of the parties' three children." Four months later, Ridgway married his second wife and subsequently changed the designated beneficiary of his $20,000 Servicemen's Group Life Insurance Act policy from his children to her. Less than a year later, Ridgway died, and both his widow and his former wife, on behalf of the children, asserted claims to the policy proceeds. Former Wife, as here, filed both a declaratory judgment action seeking direct payment of the proceeds to the children, and a cross-claim for the imposition of a constructive trust on any proceeds paid to Widow.

Despite "equities" favoring the children, the Supreme Court reversed the state court's imposition of a constructive trust, finding Ridgway had a statutory right to change the beneficiary of his life insurance. Therefore, his action could not amount to fraudulent conduct or breach of trust. Moreover, the Ridgway Court held the imposition of a constructive trust would be inconsistent with the anti-attachment provision of the government-sponsored life insurance plan, and any diversion of the proceeds thereby would "operate as a forbidden 'seizure' of those proceeds." *Id.* at 57–58, 102 S.Ct. 49; *see also Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990) (holding ERISA's anti-alienation provision barred imposition of constructive trust on union official's retirement account, even where official had embezzled funds from union); *Hoffman v. United States,* 391 F.2d 195 (9th Cir.1968); *Metropolitan Life Ins. Co. v. McShan,* 577 F.Supp. 165 (N.D.Cal.1983); *Metropolitan Life Ins. Co. v. Potter,* 533 So.2d 589 (Ala.1988). As the Court stated regarding the change of beneficiary:

> [T]o say that this type of conduct constitutes constructive fraud would be to open the policy proceeds to a suit by any commercial creditor, a result that would render [the anti-attachment provision] nugatory.

*Ridgway,* 454 U.S. at 59, 102 S.Ct. 49.

We find the Court's analysis in *Ridgway* persuasive. Husband had a statutory right to change his designated beneficiary, *see* S.C.Code Ann. §§ 9–1–1770 and 9–1–1650 (1985 & Supp.1998), so his decision to name Widow as beneficiary cannot be considered fraudulent. Furthermore, a constructive trust would, without question, operate to attach the SCRS benefits at issue, in contravention of the anti-alienation provisions of § 9–1–1680. We therefore reverse the trial court's denial of Widow's motion to dismiss former Wife's constructive trust claim.

## II. Dismissal With Prejudice

Widow argues the trial court improperly refused to dismiss former Wife's declaratory judgment action with prejudice, thereby barring her from further litigating this claim. We disagree.

Widow asserts because SCRS accepted Husband's change of beneficiary designation, and former Wife concedes the underlying order does not meet the statutory criteria for qualification as a QDRO, former Wife's failure to seek administrative review in a "timely fashion" operates as a waiver of her opportunity to be heard on the merits. Widow, however, cites no case law to support this view; the cases proffered concern state employee grievance appeals under S.C.Code Ann. § 8–17–340 and are, therefore, inapposite.

Furthermore, SCRS does not agree with Widow's position. In its response brief, SCRS relates that it will review the order if former Wife submits it, stating the matter is properly resolved through the administrative procedures and review process set forth in S.C.Code Ann. §§ 9–18–10 *et seq.* Accordingly, we affirm the trial court's ruling on this issue.

## *CONCLUSION*

We hold the statutory process prescribed by §§ 9–18–10 *et seq.* applies to former Wife's 1975 domestic relations order. We rule the irrevocable designation of former Wife as Husband's beneficiary is an assignment under § 9–1–1680. On Widow's cross-appeal, we conclude a constructive trust violates the anti-alienation provisions of § 9–1–1680. Former Wife is required to exhaust her administrative remedies by submitting her domestic relations order to SCRS for consideration.

**AFFIRMED IN PART AND REVERSED IN PART.**

STILWELL, J., concurs.

CURETON, J., concurs in separate opinion.

CURETON, Judge (Concurring):

I concur in the result reached by the majority on all issues, but I would analyze Section II of the opinion dealing with "Exhaustion of Remedies" differently. I view S.C.Code Annotated Section 9–18–30 as establishing a jurisdictional bar to the circuit court considering former Wife's declaratory judgment action against SCRS. That section makes the administrator of the retirement system the *exclusive authority* to determine the effect of the divorce order on the husband's retirement benefits. S.C.Code Ann. § 9–18–30(A). If the ad-

ministrator refuses to implement the terms of the divorce order, former Wife may appeal that decision to the Administrative Law Judge Division. An adverse decision by the Administrative Law Judge Division may be appealed to the circuit court. As I interpret Section 9–18–30, an appeal from the administrative law judge is the exclusive method of obtaining judicial review. The circuit court simply does not have jurisdiction to entertain a declaratory judgment action against the retirement system where the issue concerns qualification of a domestic order.