591 S.E.2d 654

**Carl W. BOWMAN, Appellant,**

v.

**Norma M. BOWMAN, Respondent.**

**No. 3726.**

Court of Appeals of South Carolina.

Heard Nov. 4, 2003.

Decided Jan. 20, 2004.

Cynthia Barrier Castengera, of Newland, North Carolina; J. Mark Taylor and C. Vance Stricklin, both of West Columbia, for appellant.

F. Glenn Smith, of Columbia, for respondent.

KITTREDGE, J.:

The family court granted Carl W. Bowman (Husband) a divorce from Norma M. Bowman (Wife), equitably divided the marital estate, and awarded Husband attorney fees and suit monies. Following the denial of the parties' Rule 59(e), SCRCP, motions, Husband filed a Rule 60(b)(2) and (3) motion to set aside the judgment. The family court denied the motion. On appeal Husband challenges the adequacy of the attorney fee and suit money award and the denial of his Rule 60(b)(2) and (3) motion. We affirm.

## FACTS

In July 1997, after thirty-five years of marriage, Husband filed an action for divorce seeking equitable division of the marital estate, attorney fees, and suit monies. Wife admitted to adultery in her pleadings, and the paramount issue remaining was the equitable division of the marital estate. Each party challenged the inclusion in the marital estate of his and her respective retirement plans,[1] and Wife contested Husband's claim for attorney fees and suit monies.

The family court issued an order granting Husband a divorce, excluding Wife's defined benefit plan from the marital estate, including Husband's retirement plan in the marital estate, and awarding Husband $7,048 in attorney fees and suit monies. The court further requested that the parties attempt to reach an agreement concerning the division of marital property to accomplish the equitable division of 60% to Husband and 40% to Wife. The parties were unable to resolve all

---

1. Wife's purchase money pension plan was, without objection, included in the marital estate. Regarding Wife, this appeal only concerns her defined benefit plan that was created after the filing date of this action.

issues, necessitating the family court's involvement in concluding the matter.

Both parties filed Rule 59(e) motions, which were denied. Thereafter, upon receipt of information through post-judgment discovery concerning the funding source of Wife's defined benefit plan, Husband sought relief from the judgment pursuant to Rule 60(b)(2) and (3). The family court denied the motion, primarily finding Husband could have discovered the information prior to trial.

## STANDARD OF REVIEW

In appeals from the family court, this court has the authority to find facts in accordance with its view of the preponderance of the evidence. *Rutherford v. Rutherford,* 307 S.C. 199, 204, 414 S.E.2d 157, 160 (1992). This broad scope of review does not, however, require this court to disregard the findings of the family court. *Stevenson v. Stevenson,* 276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981). The decision to grant or deny a motion under Rule 60(b) is within the sound discretion of the trial court. *Coleman v. Dunlap,* 306 S.C. 491, 494, 413 S.E.2d 15, 17 (1992). On review, we are limited to determining whether the trial court abused its discretion in granting or denying such a motion. *Saro Invs. v. Ocean Holiday P'ship,* 314 S.C. 116, 124, 441 S.E.2d 835, 840 (Ct.App.1994).

## LAW/ANALYSIS

I.  Exclusion of Wife's Defined Benefit Plan from the Marital Estate and the Denial of Husband's Rule 60(b)(2) and (3) Motion

Husband argues the family court erred in not granting a new trial as he sought a second opportunity to persuade the court to include Wife's defined benefit plan in the marital estate. Specifically, Husband asserts the family court erred in denying his Rule 60(b)(2) and (3) motion after Husband provided evidence that Wife's defined benefit plan was funded, at least in part, from life insurance policies purchased by Wife's employer during the marriage. As noted, marital litigation commenced in July 1997. Wife's defined benefit plan was created on July 1, 1998 and was funded in June 1999. It is

stipulated that Wife's defined plan "was substantially funded at its inception." The family court reasoned that since Wife did not own the defined benefit plan until after marital litigation was filed, the retirement plan should be excluded from the marital estate. Husband appeals from the denial of his Rule 60(b)(2) and (3) motion.[2]

The new evidence submitted post-judgment in support of Husband's Rule 60(b)(2) and (3) motion consists of a statement from Wife's employer, the South Carolina Student Loan Corporation, showing that the assets of the defined benefit plan include the cash surrender values of eight life insurance policies with New York Life Insurance Company. Additional evidence reveals that one of the policies was purchased in 1988, and Wife was listed as the named insured. While we agree with Husband that this information establishes a nexus between Wife's defined benefit plan and the cash surrender values of the life insurance policies as a funding source for the plan,[3] we find Husband's Rule 60(b)(2) and (3) motion was nevertheless properly denied. We consider it unnecessary to explore the differing standards between Rule 60(b)(2) and (3) as advanced by Husband, for we conclude that South Carolina's strong policy towards finality of judgments trumps a party's ability to set aside a judgment where, as here, the party could have discovered the evidence prior to trial. *See Bryan v. Bryan,* 220 S.C. 164, 168, 66 S.E.2d 609, 610 (1951) (finding that equitable relief from a judgment is not available for intrinsic fraud "on the theory that an issue which has been tried and passed upon in the original action should not be retried in an action of equitable relief, and that otherwise litigation would be interminable"); *Chewning v. Ford Motor Co.,* 354 S.C. 72, 86, 579 S.E.2d 605, 613 (2003) (finding that while post-judgment relief was granted as a result of "unique

---

**2.** Rule 60(b)(2), SCRCP, provides that judgments may be set aside if there has been "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)...." Under Rule 60(b)(3), SCRCP, judgments may also be set aside for "fraud, misrepresentation, or other misconduct of an adverse party...."

**3.** The family court's error in concluding otherwise does not require reversal. As correctly determined by the family court, Husband could have ascertained this information prior to trial.

facts," the court reaffirmed South Carolina's "longstanding policy towards final judgments").

Husband invites this court to apply the "misconduct" standard in Rule 60(b)(3). Were we to do so, we would still be constrained to affirm the family court. The cases cited by Husband permit Rule 60(b)(3) relief only where "the misconduct prevented the moving party from fully presenting its case." *Schultz v. Butcher*, 24 F.3d 626, 630 (4th Cir.1994) citing *Square Constr. Co. v. Washington Metro. Area Transit Auth.*, 657 Fed.2d 68, 71 (4th Cir.1981); *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 924 (1st Cir.1988) (stating "the challenged behavior must *substantially* have interfered with the aggrieved party's ability fully and fairly to prepare for and proceed at trial") (emphasis in original); *see also Rycroft v. Tanguay*, 279 S.C. 76, 79, 302 S.E.2d 327, 329 (1983) (stating "equity will not grant relief to one against whom an unfavorable judgment has been rendered, even in consequence of fraud, where the aggrieved party has not acted with diligence"); *Dunn v. Consolidated Rail Corp.*, 890 F.Supp. 1262, 1269 (M.D.La.1995) (stating "[a] Rule 60(b)(3) assertion ... must be such as to prevent the losing party from fully and fairly presenting its case or defense").

Here, Husband was aware of Wife's defined benefit plan, as well as her management position with the South Carolina Student Loan Corporation. Wife acknowledged this post-filing retirement account at her May 11, 2000 deposition, approximately seven months prior to trial. Also prior to trial, Husband noticed the deposition of James Kenneth Player, the executive vice president of Wife's employer, for the purpose of gaining additional evidence and information concerning the defined benefit plan. However, Husband elected not to take Player's deposition, opting instead to enter into the following stipulation with Wife:

As to [Wife's] plan, we will stipulate that the defined benefits were not created until after the date of filing. The plan was funded by the South Carolina Student Loan Corporation. The plan was substantially funded at its inception. The plan utilized past "time of service" to calculate the initial contribution to the plan. We stipulate that this is what [Wife's employer] and/or [Wife] would otherwise testify to if called as a witness.

■ Husband was thus aware *prior to trial* of this asset and Wife's reluctance to disclose it. Significantly, Husband faced no legal impediment prior to trial precluding his access to information concerning any aspect of Wife's defined benefit plan, including the plan's funding source. Against this procedural history, Husband elected not to pursue further discovery, and he entered into the above stipulation. Absent valid grounds for Rule 60(b) relief, an unfavorable ruling at trial does not provide an unsuccessful litigant another opportunity to litigate an issue. We find no abuse of discretion and therefore affirm the family court's denial of Husband's Rule 60(b)(2) and (3) motion.

We in no manner condone Wife's noncompliance with the rules regarding discovery supplementation, and we are not unsympathetic with litigants, like Husband, who encounter adversaries who display a deliberate indifference to the discovery rules.[4] We further recognize the myriad difficulties and vagaries inherent in the family court arena for judges and practitioners alike.

■ In this case, Husband is ultimately not prejudiced by the denial of Rule 60(b) relief, for we are persuaded that the family court correctly excluded Wife's defined benefit plan from the marital estate. The post-judgment discovery does little to advance Husband's argument, as it simply bolsters the prior stipulation that the "plan was substantially funded at its inception." The life insurance policies at issue are best described as corporate assets, which Wife neither controlled nor had the right to control based on the record before us.

We believe it useful to the family court bench and bar to provide a general framework within which to address and properly classify employment related benefits, such as a retirement plan, purportedly created after the date of filing of marital litigation but prior to dissolution of the marriage. We do so in recognition of the reality that some spouses in anticipation of, and during, marital litigation have a lamenta-

---

4. When invoked, the rules governing court procedures in general and discovery in particular provide meaningful remedies and sanctions for noncomplying parties and attorneys. *See, e.g.,* Rule 37, SCRCP.

ble tendency to engage in a variety of deceptive acts and practices to secrete assets.[5]

For property to be included within the term "marital property," two factors must exist: property must be (1) "acquired ... during the marriage" and (2) "owned as of the date of filing or commencement of marital litigation." S.C.Code Ann. § 20–7–473 (Supp.2002). The "acquired during marriage" component is generally established by showing that the property relates to compensation earned or effort expended during the marriage. *See Mallett v. Mallett,* 323 S.C. 141, 150, 473 S.E.2d 804, 810 (Ct.App.1996) (stating "[u]pon dissolution of the marriage, property acquired during the marriage should be divided and distributed in a manner which fairly reflects each spouse's contribution to its acquisition, regardless of which spouse holds legal title."); *Johnson v. Johnson,* 296 S.C. 289, 297, 372 S.E.2d 107, 111 (Ct.App.1988) (finding only the appreciation in value of assets "resulting directly or indirectly from the efforts of the parties was marital property"). The "ownership" prong, while ostensibly straightforward, can raise troublesome issues. A technical application of the "ownership" prong may in some cases invite fraud, resulting in the improper exclusion of property from the marital estate, which, we believe, would be contrary to legislative intent. For example, a party may sufficiently possess an ascertainable interest in or entitlement to property "acquired during the marriage," yet purposefully delay- ownership until after marital litigation has commenced. In such an example, the party's interest in and entitlement to ownership is sufficient to conclude the "ownership" prong has been satisfied.[6] To conclude otherwise would promote fraud, reward misconduct, and contravene legislative intent.

5. The issue in this case is limited to the proper classification of an asset, though we acknowledge that such deception may go well beyond asset classification and include efforts to assign unreasonable values to assets, as well as artificially portraying earnings and earning capacity.

6. "South Carolina courts construe the term 'property' very broadly. The term 'property' is a general term that is used to designate a right of ownership and it includes every subject of whatever nature upon which the right of ownership can legally attach, including choses in action." *Ball v. Ball,* 312 S.C. 31, 33, 430 S.E.2d 533, 534 (Ct.App.1993).

Regarding retirement plans and employment benefits created after the commencement of marital litigation but before dissolution, the mere fact that some aspect of the plan or benefit may relate to service during the parties' marriage does not mandate inclusion in the marital estate. Indeed, virtually all retirement plans and employment benefits are connected in some manner to an employee's prior service. Further, an employer may, completely independent of the employee, institute a retirement plan or benefit after commencement of marital litigation. Depending on the totality of the facts and circumstances, the employee-spouse may not have an interest in or entitlement to such plan or benefit at the time of marital litigation, *i.e.*, a *bona fide* absence of ownership when marital litigation is commenced.

The mere fact that technical ownership of a retirement plan or employment benefit is delayed until after the commencement of marital litigation does not mandate its exclusion from the marital estate. Where a party possesses an ascertainable interest in or entitlement to property during the marriage, the party's attempts to delay technical ownership status until after marital litigation has commenced shall not prevent a finding of the requisite "ownership" necessary for inclusion in the marital estate. Therefore, where lack of ownership status as of the date of marital litigation is attributable to any purposeful act or omission by the spouse, the property shall be deemed "owned" within the meaning of § 20–7–473 so as to include the marital portion in the marital estate.

Resolution of this marital property classification dilemma is certainly fact-intensive, and no bright line test will suffice. We continue to recognize and respect the broad discretion accorded to family court judges in the fact-sensitive inquiries surrounding the identification of marital and nonmarital property as well as the determination of the equitable distribution of the marital estate. *See Murphy v. Murphy,* 319 S.C. 324, 329, 461 S.E.2d 39, 41 (1995) (stating "[f]amily court judges have wide discretion in determining how marital property is to be distributed") (citation omitted).

## II. Inclusion of Husband's Retirement Plan in the Marital Estate

Husband argues the family court erred in including his retirement plan in the marital estate, valuing the plan as of the filing date of marital litigation, and apportioning 40% of the plan's monthly payments to Wife.

In May 1996, approximately one year before the filing of marital litigation, Husband's employer, South Carolina Electric and Gas (SCE & G), informed Husband that his position would be "eliminated as of June 30, 1996." SCE & G extended Husband three "severance options." On May 30, 1996, Husband elected the third option, referred to as "six months' severance and early retirement." The six months' "severance pay" amounted to $46,332 and was paid to Husband on or about July 1, 1996. Monthly payments to Husband pursuant to the early retirement option also began in July 1996, one year prior to the commencement of marital litigation. The family court included Husband's early retirement benefit in the marital estate. Husband, referring to this asset exclusively as "severance pay," assigns error to its consideration as marital property and inclusion in the marital estate.

We initially clarify the true nature of this asset. The "severance option" exercised by Husband in May 1996 consisted of two components: (1) severance pay of $46,332; and (2) a "Special Incentive Retirement Benefit" paid in monthly installments over a multi-year period. We find these benefits were "acquired during the marriage" in the sense that the payments were compensation for services performed during the course of the marriage. *See* S.C.Code Ann. § 20–7–473 (Supp. 2002); *Tinsley v. Tinsley*, 326 S.C. 374, 381, 483 S.E.2d 198, 202 (Ct.App.1997). The valuation of these benefits by Raymond McKay, Husband's expert, omits the actual severance pay portion and includes only those retirement benefits due on or after the date of filing of marital litigation. McKay properly utilized a "valuation date" of July 9, 1997.[7] He valued the

---

7. McKay's analysis structures the monthly retirement benefits at three levels. Payments began on July 1, 1996. McKay's valuation reflects the benefits "in pay status" as of July 9, 1997, with 8.23 "years pension to be received." The 8.23 years reflects the period from the commencement date of marital litigation (the valuation date) to October 2005 when Husband reaches age 62. The agreement between Husband and

retirement benefits at $326,148 at the time of filing and $254,637 at the time of trial. While Husband asserts error in the inclusion of these benefits in the marital estate, the parties accept McKay's methodology and valuation.

We reject Husband's continuing efforts to characterize his retirement benefits as "severance." Not only does McKay's valuation of these benefits *exclude* the severance benefits paid one year prior to marital litigation, we adhere to South Carolina's sound and established approach of scrutinizing the true nature and purpose of the benefit. *See, e.g., Mears v. Mears*, 305 S.C. 150, 156, 406 S.E.2d 376, 380 (Ct.App.1991), *overruled on other grounds by Marsh v. Marsh*, 313 S.C. 42, 437 S.E.2d 34 (1993) (concluding proper classification of employment termination benefits as marital or nonmarital property "depends on the purpose of the payments"); *Mallett*, 323 S.C. at 152, 473 S.E.2d at 810 (holding property classified as nonmarital because the "purpose" of the benefit was to replace earnings after the date commencement of marital litigation); *Fisher v. Fisher*, 319 S.C. 500, 504, 462 S.E.2d 303, 305 (Ct.App.1995) (finding benefits paid pursuant to a "voluntary separation incentive" were analogous to an "early retirement," and the payments were thus deemed marital property "under the facts of this case"); *Tinsley*, 326 S.C. at 381–82, 483 S.E.2d at 202 (holding disability benefits were not marital property since the "payments are a replacement for income he would be earning currently and would be able to earn in the future had he not become disabled"). Thus, classification of property as marital or nonmarital must be determined in light of the true nature and purpose of the benefit. South Carolina does not classify property as marital or nonmarital based on the title or nomenclature assigned by a party.

We find the family court correctly classified Husband's retirement benefits as marital property subject to equitable distribution. The benefits are compensation for services performed during marital years and were, thus, acquired during the marriage and owned by Husband as of the commencement

---

SCE & G anticipated a reduced monthly benefit effective October 2005, which McKay's valuation recognizes. The third level of benefits begins in October 2008 when Husband reaches age 65. Close scrutiny of McKay's detailed valuation demonstrates the *exclusion* of the severance pay as well as those retirement benefits paid before the valuation date.

of marital litigation. *See* S.C.Code Ann. § 20–7–473 (Supp. 2002).

■ Husband next contends the family court erred in valuing his retirement plan as of the date marital litigation was filed. A decrease in value occurred post-filing, solely attributable to Husband's expenditure of these funds after the filing date. Husband suggests a valuation as of the date of trial would be more appropriate. We disagree with Husband's position for two reasons. First, Husband's proposed property division relies on the July 1997 valuation date, with the plan value furnished by Husband's expert. Second, Husband's expenditure of these funds was voluntary. Unlike the situation in *Tinsley* where disability payments by necessity replaced future earnings, Husband acknowledged at trial his continuing ability to work:

Wife's counsel: Do you have any impediments or disabilities at this time?

Husband: No, sir.

Wife's counsel: You're in good health?

Husband: Are you talking about impediments that would stop me from going to work?

Wife's counsel: Yes, sir.

Husband: No, sir, I don't have any.

Wife's counsel: Okay. So you could go to work, couldn't you?

Husband: Yes, sir.

■ Accordingly, we concur with the family court's reliance on the statutory valuation date.[8]

■ Husband's final argument in connection with his retirement benefits is the family court's award to Wife of a portion of his monthly benefits. In this regard, the family court did precisely what Husband requested. It adopted Husband's proposed equitable division, and in so doing, rejected Wife's efforts to avoid the monthly pay-out from Husband's

8. We do, however, recognize that passive post-filing changes in the appreciation or depreciation of marital assets may be considered by the family court in determining an equitable apportionment of the marital estate. *See Dixon v. Dixon*, 334 S.C. 222, 228, 512 S.E.2d 539, 542 (Ct.App.1999).

retirement benefits. Husband may not seek and receive a particular result at trial and then challenge it on appeal. *See, e.g., Bazzle v. Green Tree Fin. Corp.,* 351 S.C. 244, 255, 569 S.E.2d 349, 355 (2002), *vacated and remanded on other grounds by Green Tree Fin. Corp. v. Bazzle,* —— U.S. ——, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (stating "[t]he courts of this state have recognized that a party cannot complain when it receives the relief for which it has asked.").

We find the family court did not err in including Husband's retirement plan in the marital estate. Further, we find there was no error in the valuation or apportionment of the plan.

### III.   Adequacy of Award of Attorney Fees and Suit Monies

Husband argues the family court's award of $7,048 in attorney fees and suit monies was inadequate.

"The award of attorney fees in a divorce action and the amount thereof are matters within the discretion of the trial judge." *Sexton v. Sexton,* 321 S.C. 487, 491, 469 S.E.2d 608, 611 (Ct.App.1996) (citations omitted). While we acknowledge that Husband incurred litigation expenses in excess of the amount awarded, we find no abuse of discretion. We affirm the family court's award of attorney fees and suit monies in the amount of $7,048.

**AFFIRMED.**

HEARN, C.J., and HOWARD, J., concur.