THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Jane Addis Hunnicutt, Respondent,
 
 
 

v.

 
 
 
 Stanley Philips Hunnicutt, Appellant.
 
 
 

Appeal From Horry County
Lisa A. Kinon, Family Court Judge

 Unpublished Opinion No. 2006-UP-024
Submitted December 1, 2005  Filed January 12, 2006

AFFIRMED IN PART,
REVERSED IN PART, AND
MODIFIED IN PART

 
 
 
 John O. McDougall and Emma I. Bryson, both of Sumter, for Appellant.
 James L. Hills, of Myrtle Beach, for Respondent.
 
 
 

PER CURIAM:  Stanley Philips Hunnicutt (Husband) appeals from the family courts order granting Jane Addis Hunnicutt (Wife) a divorce and awarding her alimony, an equitable division of the marital property, and attorneys fees.  He asserts the family court improperly awarded alimony based, in part, on expenses associated with the parties emancipated daughter.  Additionally, he contends the family court erred in its valuation of marital property, including Wifes retirement account.  Finally, he maintains the court erred in awarding Wife attorneys fees.  We affirm in part, reverse in part, and modify in part.[1]
FACTS
Husband and Wife were married for nearly twenty-six years and lived in Greenville County.  The parties had two daughters, both of whom were emancipated.  One of the daughters attended college and was aided financially by Wife.  Additionally, the parties had historically allocated money received from a partnership towards her tuition.  
Shortly before the parties separated, Husband was terminated from his employment with Springs Industries and received a severance package equal to six months salary.  Husband became self-employed as a sales representative for ViPac.  His salary was approximately $73,000 per year.  Wife testified Husband informed her that once he was established he could earn greater income in the range of $90-110,000 per year. 
After the separation, Wife moved to the parties residence in Horry County and took a teaching position.  However, in early 2003, Wife returned to Greenville due to emotional problems.  She eventually took a position as a guidance counselor earning a gross income of approximately $53,000 per year. 
Wife sought a divorce on the ground of Husbands adultery.  She further sought permanent periodic or lump sum alimony, an equitable division of the parties assets and debts, and attorneys fees.  Husband answered and counterclaimed requesting that neither party receive alimony, the marital residence be sold, an equitable division of marital assets, and attorneys fees. 
The family court granted the divorce on the ground of Husbands adultery, awarded Wife permanent periodic alimony of $750 per month, awarded Wife the marital home, divided the marital assets equally (fifty percent to each party), and awarded Wife $10,000 in attorneys fees.  After Husband filed a motion for reconsideration, the family court altered the amount of his severance package for the purpose of dividing the marital estate.  This appeal followed.
STANDARD OF REVIEW
In appeals from the family court, this court may find facts in accordance with its own view of the preponderance of the evidence. Rutherford v. Rutherford, 307 S.C. 199, 204, 414 S.E.2d 157, 160 (1992); Owens v. Owens, 320 S.C. 543, 546, 466 S.E.2d 373, 375 (Ct. App. 1996).  However, this broad scope of review does not require us to disregard the family courts findings.  Stevenson v. Stevenson, 276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981).  Nor must we ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  Cherry v. Thomasson, 276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981); Miles v. Miles, 355 S.C. 511, 516, 586 S.E.2d 136, 139 (Ct. App. 2003).
DISCUSSION
Husband contends the family court erred in its determination that Wife was entitled to an award of alimony, the valuation of Wifes retirement account, the equitable distribution of marital property, and the award of attorneys fees to Wife. 
I.  Alimony
Husband maintains the family court erred in awarding Wife permanent periodic alimony.  First, he contends Wifes testimony indicated she sought rehabilitative alimony, which was not requested in her complaint.  Second, he asserts Wifes financial declarations improperly included expenses related to the parties daughter and the need for alimony was not shown.  Finally, he argues the family court erred in imputing income to him as a result of his termination from Springs and his self-employment as a sales representative. 
An award of alimony rests within the sound discretion of the family court and will not be disturbed absent an abuse of discretion.  Dearybury v. Dearybury, 351 S.C. 278, 282, 569 S.E.2d 367, 369 (2002).  Alimony is a substitute for the support which is normally incident to the marital relationship.  Spence v. Spence, 260 S.C. 526, 529, 197 S.E.2d 683, 684 (1973); Johnson v. Johnson, 296 S.C. 289, 300, 372 S.E.2d 107, 113 (Ct. App. 1988).  Generally, alimony should place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage.  Allen v. Allen, 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct. App. 2001).  It is the duty of the family court to make an alimony award that is fit, equitable, and just if the claim is well founded.  Id. at 184, 554 S.E.2d at 424.  The family court judge may grant alimony in an amount and for a term as the judge considers appropriate under the circumstances. S.C. Code Ann. § 20-3-130(A) (Supp. 2004).
Factors to be considered in making an alimony award include:  (1) duration of the marriage; (2) physical and emotional health of the parties; (3) educational background of the parties; (4) employment history and earning potential of the parties; (5) standard of living established during the marriage; (6) current and reasonably anticipated earnings of the parties; (7) current and reasonably anticipated expenses of the parties; (8) marital and nonmarital properties of the parties; (9) custody of children; (10) marital misconduct or fault; (11) tax consequences; and (12) prior support obligations; as well as (13) other factors the court considers relevant.  S.C. Code Ann. § 20-3-130(C) (Supp. 2004).  The court is required to consider all relevant factors in determining alimony.  Epperly v. Epperly, 312 S.C. 411, 415, 440 S.E.2d 884, 886 (Ct. App. 1994).  No one factor is dispositive.  Lide v. Lide, 277 S.C. 155, 157, 283 S.E.2d 832, 833 (1981).
A.  Wifes Testimony
Husband contends Wifes testimony established that she sought rehabilitative alimony of only $750 per month for ten years.  He claims because this type of alimony was not requested in her complaint, she should be barred from receiving any alimony.  In the alternative, he contends the family court erred in awarding her $750 per month as permanent periodic alimony given her testimony.  We disagree.
Although rehabilitative alimony may be an appropriate form of spousal support in some cases, permanent periodic alimony is favored in South Carolina.  Jenkins v. Jenkins, 345 S.C. 88, 95, 545 S.E.2d 531, 535 (Ct. App. 2001).  Rehabilitative alimony may be awarded only upon a showing of special circumstances justifying a departure from the normal preference for permanent periodic support.  The purpose of rehabilitative alimony is to encourage a dependent spouse to become self-supporting after a divorce.  Id. 
Additionally, [t]he appellate courts of this state have said many times that ordinarily a party may not receive relief not contemplated in his pleadings.  Loftis v. Loftis, 286 S.C. 12, 13-14, 331 S.E.2d 372, 373 (Ct. App. 1985) (citing Gainey v. Gainey, 279 S.C. 68, 301 S.E.2d 763 (1983);  Ingram v. Ingram, 273 S.C. 113, 254 S.E.2d 680 (1979); Bass v. Bass, 272 S.C. 177, 249 S.E.2d 905 (1978); Bolding v. Bolding, 283 S.C. 501, 323 S.E.2d 535 (Ct. App. 1984); Bryan v. Bryan, 282 S.C. 506, 319 S.E.2d 360 (Ct. App. 1984)).  Due process requires that a litigant be placed on notice of the issues which the court is to consider.  Richardson v. Richardson, 309 S.C. 31, 35, 419 S.E.2d 806, 808 (Ct. App. 1992).
Wifes pleadings made a request for the court to require the Defendant both pendente lite and permanently, to pay a reasonable amount of permanent periodic support to Plaintiff . . . or, in the alternative, for payment of a lump sum based upon the Defendants substantial estate.  Later in her complaint she again requested either permanent periodic or lump sum alimony, but never did she specifically request rehabilitative alimony.  Her complaint also asked the court to grant such other and further relief as [the family court] may deem just and appropriate. 
During her trial testimony, Wife was asked:  Mrs. Hunnicutt, do you think that the Court should award you alimony?  She replied:  Yes, sir.  She was then asked:  And do you have an amount that you think would be fair and appropriate?  She responded:  $750 a month for ten years.  In explaining her answer she stated:  Looking at my salary and what I can make and what [Husbands] salary is and what he can make, I felt like that would be a fair price. 
Husband made a motion for an involuntary dismissal of Wifes cause of action for alimony, arguing her testimony did not support a type of alimony requested in her complaint.  The court denied the motion, and ultimately awarded Wife $750 a month in permanent periodic alimony.  The court noted:  This court found [Wife] to be in the $1000.00 per month category, but awarded $750.00 because that is what [Wife] asked for. . . . Court finds it does not have the authority to cap this amount or to impose a time limit, therefore, this award is a permanent periodic alimony.  There were no facts for rehabilitative alimony.  
While Wifes request in her testimony appears to ask for rehabilitative alimony, it was merely a suggestion of an amount she felt was fair.  She clearly believed Husband had more income and should have to contribute to her standard of living.  Her explanation indicates she felt the alimony should continue as long as there was a difference in the incomes of the parties.  Additionally, there was no case presented to support a claim of rehabilitative alimony.  Finally, Husband was well aware of Wifes request for permanent periodic alimony as it was properly requested in her complaint.
The family court judge may grant alimony in an amount and for a term as the judge considers appropriate under the circumstances. S.C. Code Ann. § 20-3-130(A) (Supp. 2004).  Under the circumstances of this case, it was not error for the judge to award permanent periodic alimony when it was requested in Wifes complaint, Wifes testimony was suggestive of rehabilitative or periodic alimony, and there was clearly no case made for rehabilitative alimony.  Accordingly, we find the court did not abuse its discretion in awarding permanent periodic alimony to Wife or in denying Husbands motion for an involuntary nonsuit on the issue of alimony.
B.   Daughters Expenses
Husband maintains Wifes financial declarations include numerous expenses attributable to the parties daughter who is attending college.  He asserts the financial declaration was inherently unreliable and any remaining expenses do not justify an award of alimony.  We disagree.
First, most of Husbands claims are not preserved for review on appeal.  In his motion for reconsideration after the court specifically excluded some items on Wifes financial declaration and set the amount of alimony, Husband did not request the court recalculate the amount based on additional items belonging to the daughter and not Wife.  He never raised the issue of additional school expenses being included in the calculation of the amount of alimony.  Accordingly, the issue is not preserved for review on appeal.  See Widman v. Widman, 348 S.C. 97, 119, 557 S.E.2d 693, 704 (Ct. App. 2001) (holding issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review).   
Husbands claim would also fail on the merits.  The family court specifically stated:  This Court is not awarding any college expenses of the daughter to [Wife], to be paid by [Husband]. . . . In [Wifes] Financial Declaration, the rent expense of $348.00 per month and the school expense of $950.00 per month are school expenses of Blair, and have not been considered.  The court went on to examine all of the relevant factors under section 20-3-130(C).
The court properly considered the relevant factors and made very detailed findings of fact regarding the required factors.  The court found Wifes expenses were about $1000 more than her income and that Husband had the ability to pay in order to maintain Wifes standard of living.  We find no abuse of discretion in the courts determination that Wife was entitled to $750 per month in alimony, even if some of the expenses questioned by Husband are removed.
C.  Imputation of Income
Husband asserts the trial court erred in imputing income in the range of $90-120,000 per year to him when his financial declaration indicated he was earning approximately $73,000 and there was no evidence to show he could have been making additional income.  Although we agree with this assertion, we find it would not change the award of alimony.
It is well settled in South Carolina that an award of alimony should be based on the payor spouses earning potential rather than merely his current, reported earnings.  See S.C. Code Ann. § 20-3-130(C)(4) & -130(C)(6) (Supp. 2004) (requiring the family court to consider the employment history and earning potential of each spouse and the current and reasonably anticipated earnings of both spouses when awarding alimony).  Accordingly, a spouse obligated to pay alimony may not voluntarily or intentionally change his employment or economic circumstances so as to curtail his income and thereby avoid paying alimony or child support.  See Camp v. Camp, 269 S.C. 173, 174, 236 S.E.2d 814, 815 (1977) (affirming family courts decision ordering Husband/Father to continue paying alimony and child support at the same amount he agreed to pay prior to his voluntary change in employment which resulted in a reduced income).  
Given the principle of imputation of income for the purpose of spousal support is analogous to that of child support, we are instructed by case law involving child support.  Where a parent voluntarily lessens his or her earning capacity, this court will closely scrutinize the facts to determine the parents earning potential, rather than the parents actual income.  Camp, 269 S.C. at 174, 236 S.E.2d at 815; Robinson v. Tyson, 319 S.C. 360, 363, 461 S.E.2d 397, 399 (Ct. App. 1995); see Chastain v. Chastain, 289 S.C. 281, 283, 346 S.E.2d 33, 35 (Ct. App. 1986) (finding that father with masters degree voluntarily removed himself from the job market to attend law school and his earning potential was properly considered in calculating child support).  The failure by a parent to reach full earning capacity, by itself, does not automatically equate to voluntary underemployment such that income must be imputed.  See Kelley v. Kelley, 324 S.C. 481, 488-89, 477 S.E.2d 727, 731 (Ct. App. 1996) ([I]ncreased or decreased income, without more, is insufficient to warrant a change in circumstances; the failure to reach earning capacity, by itself, does not automatically equate to voluntary underemployment such that income must be imputed.)(citations omitted).         
The family court found Husband was terminated from his employment with Springs where he earned over $9,000.00 per month.  Additionally, the court found he was self-employed, earning $73,424.90 in his first year in sales.  While the amount he was earning as a sales representative for ViPac was less than the amount he earned at Springs, there was no evidence presented indicating he could have found a similar position to the one at Springs or intentionally forfeited income in order to avoid paying alimony.  Additionally, the only indication that his earning potential was in the range of $90-120,000 was from Wife, who testified Husband told her he could build up the job to make $90-110,000.  This is insufficient evidence to support a finding Husband was underemployed and should have additional income imputed to him in order to calculate alimony.
Notwithstanding our finding that the court improperly imputed additional income, the amount of the alimony awarded is not excessive and need not be altered.  As discussed above, the court properly considered all relevant factors including the length of the marriage, Husbands fault in the divorce, the income differential, and the parties standard of living.  Even considering the new income differential, it clearly does not outweigh the other factors, which suggested the award was proper.  Accordingly, we reverse the courts order so far as it imputed income to Husband, but affirm the award of alimony because the imputation did not result in an excess award.
II.  Wifes Retirement Account
Husband contends the family court erred in its valuation of Wifes retirement account.  He asserts the court improperly valued her State Retirement Plan as a defined contribution plan instead of as a defined benefits plan.  However, these arguments were not presented to the family court in Husbands motion to reconsider, alter or amend.  Accordingly, the issues are not preserved for our review on appeal.  Widman v. Widman, 348 S.C. 97, 119, 557 S.E.2d 693, 704 (Ct. App. 2001) (holding issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review); see also Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) (It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.). 
III.  Equitable Distribution
Husband contends the family court erred in its equitable distribution by improperly including his severance pay and the down payment on his condominium in the marital estate.  He also contends the court erred by not including money used by Wife which was received from a partnership that included Wife and Husband.  He maintains the court erred in not including in the marital estate proceeds from the sale of the family home that Husband alleges Wife dissipated prior to the final order.  Finally, he asserts the court erred in its division of the couples credit card debt.  
 The apportionment of marital property is within the discretion of the family court judge and will not be disturbed on appeal absent an abuse of discretion.  Morris v. Morris, 295 S.C. 37, 39, 367 S.E.2d 24, 25 (1988).  Section 20-7-472 of the South Carolina Code provides the family court must consider fifteen factors and give each weight as it determines.  S.C. Code Ann. § 20-7-472 (Supp. 2004).  On review, this court looks to the fairness of the overall apportionment, and if the end result is equitable, the fact that this court might have weighed specific factors differently than the family court is irrelevant.  Johnson v. Johnson, 296 S.C. 289, 300-01, 372 S.E.2d 107, 113 (Ct. App. 1988); see Doe v. Doe, 324 S.C. 492, 502, 478 S.E.2d 854, 859 (Ct. App. 1996) (stating the reviewing court will affirm the family court judges apportionment of marital property if it can be determined that the judge addressed the relevant factors under section 20-7-472 with sufficiency for the reviewing court to conclude the judge was cognizant of the statutory factors).
A.  Severance Pay
Husband contends the family court erred by including his six months severance pay as part of the marital estate.  We disagree.
Section 20-7-473 of the South Carolina Code defines marital property as all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation as provided in § 20-7-472 regardless of how legal title is held.  S.C. Code Ann. § 20-7-473 (Supp. 2004).  This court recently addressed severance pay in Bowman v. Bowman, 357 S.C. 146, 158, 591 S.E.2d 654, 660 (Ct. App. 2004):

 [W]e adhere to South Carolinas sound and established approach of scrutinizing the true nature and purpose of the benefit.  See, e.g., Mears v. Mears, 305 S.C. 150, 156, 406 S.E.2d 376, 380 (Ct. App. 1991), overruled on other grounds by Marsh v. Marsh, 313 S.C. 42, 437 S.E.2d 34 (1993) (concluding proper classification of employment termination benefits as marital or nonmarital property depends on the purpose of the payments); Mallett v. Mallett, 323 S.C. 141, 152, 473 S.E.2d 804, 810 (Ct. App. 1996) (holding property classified as nonmarital because the purpose of the benefit was to replace earnings after the date commencement of marital litigation); Fisher v. Fisher, 319 S.C. 500, 504, 462 S.E.2d 303, 305 (Ct. App. 1995) (finding benefits paid pursuant to a voluntary separation incentive were analogous to an early retirement, and the payments were thus deemed marital property under the facts of this case); Tinsley v. Tinsley, 326 S.C. 374, 381-82, 483 S.E.2d 198, 202 (Ct. App. 1997) (holding disability benefits were not marital property since the payments are a replacement for income he would be earning currently and would be able to earn in the future had he not become disabled).  Thus, classification of property as marital or nonmarital must be determined in light of the true nature and purpose of the benefit.  South Carolina does not classify property as marital or nonmarital based on the title or nomenclature assigned by a party.

In the instant case, the contract between Husband and Springs involving the six months severance pay clearly indicated it was given to Husband in exchange for his agreement to release Springs from any and all claims, suits, demands, or other causes of action of any kind . . . [Husband] might have against Springs . . . .  Accordingly, the family court did not err in including the pay received prior to filing of marital litigation in the marital estate to be divided amongst the parties.
B.  KKB Partnership
Husband maintains two payments received from the KKB Partnership were used solely by Wife and should have been included in the marital estate of the parties due to Husband not receiving the benefit of the payment.  We agree in part.
Initially, we note Husband only contested the family courts failure to include one payment of $3,000 in the marital estate and not the two payments he addresses on appeal.  Accordingly, we need only address the issue of the payment that was raised to the family court for its consideration as the issue regarding the other payment is not preserved for our review on appeal.  See Widman v. Widman, 348 S.C. 97, 119, 557 S.E.2d 693, 704 (Ct. App. 2001) (holding issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review).
We continue to recognize and respect the broad discretion accorded to family court judges in the fact-sensitive inquiries surrounding the identification of marital and nonmarital property as well as the determination of the equitable distribution of the marital estate.  Bowman v. Bowman, 357 S.C. 146, 156, 591 S.E.2d 654, 659 (Ct. App. 2004).  
The family court specifically found Wife received the $3,000 payment from the real estate partnership, which included both parties as well as other family members.  The court further found Wife spent the money on tuition for the daughter in college.  Uncontroverted testimony presented at trial indicated the amount received from the partnership was given every year to the daughter for use in paying her college expenses.
Because the contested payment was received prior to the filing of this litigation, we hold the trial court erred in declining to find it constituted marital property.  However, we find no reversible error given the payment had already been disposed of and, thus, was not available for equitable distribution.  Moreover, we note Husband never objected to Wifes use of the KKB partnership payment to pay for the daughters tuition nor did Husband express a desired intent to seek reimbursement for these payments.
C. Simpsonville Home
Husband contends Wife dissipated the proceeds received from the sale of their Simpsonville home shortly before the filing for divorce.  We disagree.
Initially, we question whether this issue is preserved for review on appeal given it was not specifically raised to the trial court in Husbands motion for reconsideration and was never addressed by the family court.  See Widman v. Widman, 348 S.C. 97, 119, 557 S.E.2d 693, 704 (Ct. App. 2001) (holding issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review).  However, to the extent it was briefly discussed during the hearing on Husbands motion to reconsider, we have decided to address the merits. 
Subject to certain exceptions, marital property includes all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation.  S.C. Code Ann. § 20-7-473 (Supp. 2004).  Thus, for purposes of equitable distribution, the value of marital property is the value of the property at the time of the commencement of the marital litigation.  See Mallett v. Mallett, 323 S.C. 141, 151, 473 S.E.2d 804, 810 (Ct. App. 1996) (Marital property is valued as of the date of the filing of the complaint.).  Our supreme court has noted:  there must be some evidence of willful misconduct, bad faith, intention to dissipate marital assets, or the like, before a court may alter the equitable distribution award for such misconduct.  McDavid v. McDavid, 333 S.C. 490, 496, 511 S.E.2d 365, 368 (1999).  
Wife was given $30,000 of the $70,000 in proceeds from the sale of the Simpsonville home.  Half was used to repay part of a debt owed to her father, with the remainder being spent by Wife for investigators, attorneys, tuition for the parties daughter, and a storage building.  Husband stated he believed she would use the entire $30,000 to pay off the debt to her father and because she did not do so, the $15,000 spent on other items should count against her portion of the estate.  Her expenses were not made with the intent of dissipating the martial assets so as to require a change in the equitable distribution.  Additionally, we note Husband does not appear any better able to document his expense of the $40,000 than Wife can explain the full expenses paid out of her $30,000 share.  Although Wife testified Husband paid off a second line of credit with the $40,000, there is no documentation as to what expenses constituted the significant increase in this debt.  Accordingly, the family court did not err in failing to count at least $15,000 against Wifes equitable distribution.
D.  Condominium Down Payment
Husband contends $7,000.00 used as a down payment on his condominium was part of his severance pay and, therefore, should not have been included in the marital estate.  We disagree.
Subject to certain exceptions, marital property includes all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation.  S.C. Code Ann. § 20-7-473 (Supp. 2004).  As discussed above, the severance agreement provided for the payment of funds to Husband, which are marital assets due to their nature as compensation for a release of claims and not as payment of future earnings.  The agreement also included a provision allowing for the payment of up to $7,000 for relocation expenses.  While it appears Husband did not actually receive the check until after marital litigation was commenced, it is clear the benefit was received at the time the agreement was signed.  Thus, the value of the down payment later paid by Husband should be considered a marital asset as the right to repayment was in existence prior to filing of marital litigation.
E.  Credit Card Debt
Husband contends the family court erred in requiring him to pay the full amount of the Visa credit card debt because it was in his name, even though both parties used the card prior to the filing of marital litigation.  We agree.
Pursuant to section 20-7-472(13) of the South Carolina Code, the family court is required to give consideration to the marital debts of the parties when making its equitable distribution of marital property.  S.C. Code Ann. § 20-7-472(13) (Supp. 2004).  Debts incurred for marital purposes are subject to equitable distribution.  Jenkins v. Jenkins, 345 S.C. 88, 103, 545 S.E.2d 531, 539 (Ct. App. 2001).  Section 20-7-472 creates a rebuttable presumption that a debt of either spouse incurred prior to marital litigation is a marital debt, and must be factored into the totality of equitable apportionment.  Hickum v. Hickum, 320 S.C. 97, 102, 463 S.E.2d 321, 324 (Ct. App. 1995).
Marital debt, like marital property, must be specifically identified and apportioned in equitable distribution.  Smith v. Smith, 327 S.C. 448, 457, 486 S.E.2d 516, 520 (Ct. App. 1997) (holding section 20-7-472 implicitly requires that marital debt, like marital property, be specifically identified and apportioned in the equitable distribution).  The same rules of fairness and equity that apply to the equitable division of marital property also apply to the division of marital debts.  Hardy v. Hardy, 311 S.C. 433, 437, 429 S.E.2d 811, 813-14 (Ct. App. 1993).          
In the instant case, the family court recognized the parties had marital credit card debt.  However, due to the confusion created by the parties financial declarations the court simply ordered that each side be responsible for the debt on their own financial declaration.  It appears this places the full burden of the parties Visa credit card bill upon Husband.  We find this result is not equitable given the evidence in the record.
Husbands first financial declaration included a Visa credit card with a balance of $10,708.  In his second financial declaration, he lists the balance as $20,000 but admitted the increase was nonmarital.  Wifes first and second financial declaration listed a Visa credit card with a balance of $12,508.28.  However, at trial, she indicated the only Visa credit card she was aware of had a balance of about $2,000. 
Based on the evidence in the record, we find the Visa card listed on each partys financial declaration is a marital debt.  Accordingly, we find the balance remaining at the time of the filing of marital litigation should be divided equally between the parties.  Therefore, we modify the family courts order to require that each party be responsible for one-half of the $10,708 balance listed on Husbands financial declaration.  Any increase in the balance above that amount will be the responsibility of Husband.
IV.    Attorneys Fees
Husband contends the family court erred in its award of attorneys fees to Wife.  We disagree.
An award of attorneys fees lies within the sound discretion of the family court and will not be disturbed on appeal absent an abuse of discretion.  Bowen v. Bowen, 327 S.C. 561, 563, 490 S.E.2d 271, 272 (Ct. App. 1997).  The family court, in determining whether to award attorneys fees, should consider each partys ability to pay his or her own fees, the beneficial results obtained, the parties respective financial conditions, and the effect of the fee on the parties standard of living.  E.D.M. v. T.A.M., 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992).  In determining the reasonable amount of attorneys fees to award, the court should consider the nature, extent, and difficulty of the services rendered, the time necessarily devoted to the case, counsels professional standing, the contingency of compensation, the beneficial results obtained, and the customary legal fees for similar services.  Glasscock v. Glasscock, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).
The family court clearly considered the relevant factors in making an award of attorneys fees and in setting the amount.  The court considered the beneficial results obtained by Wife, the fault of the Husband in the divorce, and the financial situation of the parties. While our reversal of the imputation of income could affect the family courts determination of Husbands superior financial position, we believe Wife is nonetheless entitled to attorneys fees based upon our review of the record.  
Additionally, the court did not err in the amount of the attorneys fees as Wife was awarded only a portion of her outstanding attorneys fees.  Even though Wife paid a small portion of her fees using marital money, the court did not award her an unreasonable amount given the Glasscock factors, even if the amount she previously paid was added to the award.  Accordingly, we find the court did not abuse its discretion in awarding Wife $10,000.00 in attorneys fees.  
Furthermore, to the extent Husband asserts the court erred in denying his request for a Qualified Domestic Relations Order[2] for the payment of the award of attorneys fees, we find Husband abandoned this issue given his argument consists of two sentences without any citation to authority. See First Sav. Bank v. McLean, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (noting that where a party fails to cite any supporting authority or where the argument is merely a conclusory statement, the issue is deemed abandoned on appeal); R & G Constr., Inc. v. Lowcountry Regl Transp. Auth., 343 S.C. 424, 437, 540 S.E.2d 113, 120 (Ct. App. 2000) (deeming an issue abandoned if the appellants brief treats it in a conclusory manner).  
CONCLUSION
We find the family court did not err in awarding Wife permanent periodic alimony, notwithstanding her testimony that she desired a certain amount for a fixed time period.  We conclude the amount of the alimony was proper and did not give Wife credit for expenses related to her daughters schooling.  We reverse the family courts imputation of income to Husband, but find the amount of alimony awarded should not be altered.
Many of the issues regarding the division of the marital estate were not properly preserved for review on appeal, including the valuation of the Wifes retirement account.  On the merits, we conclude the family court properly divided the marital estate with the exception of the credit card debt.  The court properly included the amount of Husbands severance agreement with Springs and the down payment on his condominium in marital property.  In terms of the KKB partnership payment, we find the court erred in declining to find it constituted marital property.  However, we find no reversible error given the payment had already been disposed of in paying for daughters tuition.  We find the Wife did not dissipate income from the sale of the Simpsonville home.  Finally, we find the court erred in its division of the credit card debt and allocate that debt consistent with the instructions in this opinion.  We find the court properly awarded Wife attorneys fees after considering all relevant factors.  
Accordingly, the decision of the family court is
AFFIRMED IN PART, REVERSED IN PART, AND MODIFIED IN PART.
HEARN, C.J., and HUFF and BEATTY, JJ., concur.

[1]   Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.
[2]   Section 9-18-10(9) defines Qualified domestic relations order as follows:

 Qualified domestic relations order means a domestic relations order which creates or recognizes the existence of an alternate payees right, or assigns to an alternate payee the right, to receive all or a portion of a benefit payable with respect to a member or retired member under a retirement system, which directs that retirement system to disburse benefits to the alternate payee, and which meets the requirements of this chapter. 

S.C. Code Ann. § 9-18-10(9) (Supp. 2004).  Section 9-18-20 further explains:

 A qualified domestic relations order may order that all or any part of any (1) retirement benefit, (2) withdrawal or refund of contributions, (3) disability benefit, or (4) death benefit that becomes payable under the retirement system on account of the member or retired member, instead be paid by the system to the alternate payee.  

S.C. Code Ann. § 9-18-20(A) (Supp. 2004) (Emphasis added); Smith v. S.C. Retirement Sys., 336 S.C. 505, 514, 520 S.E.2d 339, 344 (Ct. App. 1999).