694 S.E.2d 25

## SOUTH CAROLINA DEPARTMENT OF CORRECTIONS, Respondent,

v.

## George Lee TOMLIN, Appellant.

### No. 4671.

Court of Appeals of South Carolina.

Submitted March 1, 2010.

Decided April 5, 2010.

Withdrawn, Substituted and Refiled May 28, 2010.

Rehearing Denied May 28, 2010.

George Tomlin, pro se, for Appellant.

Lake E. Summers, of Columbia, for Respondent.

CURETON, A.J.

George Lee Tomlin filed a grievance with the South Carolina Department of Corrections concerning conditions of his participation in the Prison Industries Program (PIP). Tomlin

appeals the circuit court's order remanding his case to the Administrative Law Court (ALC) for a determination of the prevailing wage for similar work, reversing the ALC's finding that Tomlin was an employee of the private sponsor, affirming the ALC's denial of overtime wages, and affirming the ALC's denial of reimbursement for certain pay deductions.[1] We reverse as to overtime wages, remand that issue to the ALC for further proceedings as outlined in this opinion, and affirm the circuit court's decisions on all remaining issues.[2]

After we issued our original opinion affirming in part and reversing in part, both parties petitioned for rehearing. We deny Tomlin's petition for rehearing, grant the Department's petition for rehearing, withdraw our previous opinion, and substitute this opinion.

## FACTS

Tomlin was an inmate of the Ridgeland Correctional Institution. As a participant in PIP, Tomlin provided on-site labor at the Ridgeland Correctional Institution, sometimes working in excess of eighty hours per two-week period, for PIP sponsor Kwalu Furniture. Tomlin was compensated at a rate of $5.25 per hour. Tomlin filed a grievance with the Department complaining his hourly wage was insufficient compared to the prevailing wage for similar work performed in the private sector. He asserted non-inmate employees earned $11.00 to $14.00 per hour for the same work. Tomlin further complained he did not receive additional pay for overtime hours and the Department improperly withheld funds from his paychecks. Specifically, Tomlin challenged as unconstitutional the withholding of funds for his room and board and additional funds for Victim's Assistance.[3]

---

1. This appeal is being considered alongside *S.C. Dep't of Corr. v. Billy Joe Cartrette*, 387 S.C. 640, 694 S.E.2d 18 (App.2010). The material facts, substantive arguments, and procedural postures of these two appeals are identical.

2. We decide this case without oral argument pursuant to Rule 215, SCACR.

3. *See* S.C.Code Ann. § 16–3–1290 (2003) (establishing Victim's Compensation Fund from which State Office of Victim Assistance may pay victims' claims); S.C.Code Ann. § 16–3–1260 (2003) (requiring persons

The Department denied Tomlin's grievance, and Tomlin appealed to the ALC. The ALC reversed the Department's refusal to pay Tomlin the prevailing wage and found the prevailing wage was $5.25.[4] Furthermore, the ALC affirmed the Department's denials of overtime and reimbursement for wage deductions.

Both Tomlin and the Department then appealed to the circuit court. After a hearing, the circuit court found $5.25 was not the prevailing wage and remanded that issue to the ALC with seven questions for the ALC to consider in determining the correct prevailing wage. The circuit court reversed the ALC's apparent finding that Tomlin "worked for ... or was otherwise ever an employee of Kwalu." Finally, the circuit court affirmed the ALC's determinations Tomlin was ineligible for overtime or reimbursement of wage deductions for room and board and for Victims Assistance. Tomlin now appeals.

## STANDARD OF REVIEW

■ The ALC has subject matter jurisdiction under the Administrative Procedures Act (APA) to hear properly perfected appeals from the Department's final orders in administrative or non-collateral matters. *Slezak v. S.C. Dep't of Corr.*, 361 S.C. 327, 331, 605 S.E.2d 506, 507 (2004). Our standard of review derives from the APA. *Al–Shabazz v. State*, 338 S.C. 354, 379, 527 S.E.2d 742, 755 (2000). We may affirm, remand, reverse, or modify the appealed decision if the appellant's substantive rights have suffered prejudice because the decision is:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) affected by other error of law;

---

convicted of criminal acts to reimburse the State and directing such payments to be made from inmate wages to the State Office of Victim Assistance).

4. The ALC's order seems to presume Tomlin complained of receiving a "training wage" of less than $5.25 per hour. However, Tomlin appears to have complained only that $5.25 per hour was below the prevailing wage.

(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

S.C.Code Ann. § 1–23–610(B) (Supp.2009).

## LAW/ANALYSIS

### I. Overtime Pay

■ Tomlin contends he is entitled to time-and-a-half pay for overtime worked. We agree.

In South Carolina, a non-inmate employee's right of action for overtime pay lies in § 207(a)(1) of the Federal Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C.A. §§ 201–219 (1998 & Supp.2009). Under the FLSA, non-inmate workers receive compensation at a rate of one and one-half times their hourly rate for hours worked in excess of forty per week. 29 U.S.C.A. § 207(a)(2) (1998). This court recently examined the legislative intent underlying the FLSA and found:

> The purpose of the FLSA is to protect "the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others." *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 597, 64 S.Ct. 698, 88 L.Ed. 949 (1944). The FLSA was enacted in response to a congressional finding that some industries, engaged in commerce, maintained labor conditions which were detrimental to a minimum standard of living necessary for health, efficiency, and the general well-being of workers. *See* 29 U.S.C. § 202(a) (1998). The Act attempts to eliminate unfair labor practices without substantially curtailing employment or earning power. 29 U.S.C. § 202(b). Because the FLSA is remedial and humanitarian in purpose, it should be broadly interpreted and applied to effectuate its goals. *Tennessee Coal, Iron & R.R. Co.,* 321 U.S. at 597, 64 S.Ct. 698; *Benshoff v. City of Virginia Beach,* 180 F.3d 136 (4th Cir.1999).

*Miller v. Blumenthal Mills, Inc.,* 365 S.C. 204, 221, 616 S.E.2d 722, 730 (Ct.App.2005).

Our supreme court has held the FLSA does not extend to inmate workers because, for purposes of payment of wages,

inmate workers are not employees of PIP sponsors. *Williams v. S.C. Dep't of Corr.*, 372 S.C. 255, 260, 641 S.E.2d 885, 888 (2007). Other courts, including the Federal Court of Appeals for the Fourth Circuit, have also declined to extend the protections of the FLSA and state labor statutes to inmates. *See, e.g., Harker v. State Use Indus.*, 990 F.2d 131, 135 (4th Cir.1993).

■ Nonetheless, South Carolina law requires that inmate workers in a PIP enjoy pay and working conditions comparable to those enjoyed by non-inmate workers. According to our supreme court, the overall purpose of these statutes "is to prevent unfair competition." *Adkins v. S.C. Dep't of Corr.*, 360 S.C. 413, 418, 602 S.E.2d 51, 54 (2004).

The [Department] must determine prior to using inmate labor in a [PIP] that it will not displace employed workers, that the locality does not have a surplus of available labor for the skills, crafts, or trades that would utilize inmate labor, and that the rates of pay and other conditions of employment are not less than those paid and provided for work of [a] similar nature in the locality in which the work is performed.

S.C.Code Ann. § 24–3–315 (2007). S.C.Code Ann. § 24–3–315 (2007). "No inmate participating in [PIP] may earn less than the prevailing wage for work of [a] similar nature in the private sector." S.C.Code Ann. § 24–3–430(D) (2007). While the prevailing wage statutes do not entitle inmates to a private right of action in tort, inmates may protest through the grievance process the Department's failure to comply with these statutes. *Adkins*, 360 S.C. at 419, 602 S.E.2d at 55.

■ We expand upon the analysis of this issue in our original opinion, as that analysis appears to have been incomplete. Tomlin properly brought this matter as a grievance and alleged the Department denied him time-and-a-half overtime wages for the hours he worked beyond forty each week. As observed above, both federal and South Carolina courts have held inmate workers do not qualify as "employees" and are therefore excluded from the coverage of the FLSA.[5] *See*

---

5. We specifically reject Tomlin's contention that *Hamilton v. Daniel Int'l Corp.*, 273 S.C. 409, 257 S.E.2d 157 (1979), established his right to time-and-a-half pay for overtime work. Although the *Hamilton* court

*Williams,* 372 S.C. at 260, 641 S.E.2d at 888; *Harker,* 990 F.2d at 135. However, our General Assembly has required the Department to ensure inmate workers receive "rates of pay and other conditions of employment" comparable to those afforded non-inmate workers performing similar labor in the same locality. *See* § 24–3–315. Consequently, we hold that although the FLSA does not apply to inmate workers, sections 24–3–315 and 24–3–430(D) compel the Department to ensure inmate workers who are employed under those sections receive the same pay rates and employment conditions as their non-inmate peers.[6]

The statutory mandate of comparable pay rates and employment conditions does not expressly exclude time-and-a-half pay for overtime hours worked. Instead, sections 24–3–315 and 24–3–430(E) require that inmate workers receive comparable compensation *and* prohibit inmate workers from displacing non-inmate workers. These provisions appear to support Tomlin's argument for overtime pay. Failure of the Department's contracts with PIP sponsors to provide inmate workers with time-and-a-half pay for overtime hours when their non-inmate counterparts receive it would create an impermissible and unfair advantage for inmate labor over private labor. Moreover, any failure on the Department's behalf to pay inmates time-and-a-half overtime pay when non-inmate workers receive it for comparable work in the same area contradicts the Department's obligation under section 24–3–315.[7]

---

cited to statutory language similar to that found in section 24–3–315, it did not contemplate overtime work. *Id.* at 410, 257 S.E.2d at 158. The issue in that case concerned the right of an inmate participating in a work-release program to benefits under the Worker's Compensation Act. *Id.* at 410–11, 257 S.E.2d at 158.

6. While the Department argues our opinion impacts three of its PIPs, this opinion is limited solely to the program in which Tomlin was involved and that was promulgated and operated pursuant to sections 24–3–315 and 24–3–430.

7. In its petition for rehearing, the Department declares the majority's analysis of section 24–3–430's provision of a prevailing wage for inmate labor "obviously overlooked the explicit intent of our General Assembly" regarding inmate labor. The Department cites section 24–3–310 of the South Carolina Code (2007), which indicates the purposes of inmate labor include self-maintenance, reimbursement of the State, restitution, and child support. In our opinion, these purposes harmonize with the

Consequently, the circuit court erred in denying Tomlin time-and-a-half pay for overtime work without first determining whether non-inmate workers performing the same work in the same locality receive time-and-a-half pay for overtime.[8]

In addition, we observe section 24-3-430(D) requires inmates receive the "prevailing wage" paid to their non-inmate peers for comparable work. However, the question of the prevailing wage to which Tomlin is entitled has been remanded to the ALC for further proceedings. We nonetheless have jurisdiction to consider whether the prevailing wage language of section 24-3-430(D) entitles Tomlin to overtime pay because the issue remanded concerned the proper hourly rate, only. However, because we have found section 24-3-315 resolves Tomlin's dispute, we need not address this argument. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding appellate court

---

General Assembly's mandate that inmate labor not unfairly compete with non-inmate labor. *See* §§ 24-3-315 & -430(E); *see also Adkins*, 360 S.C. at 418, 602 S.E.2d at 54 (finding the overall purpose of these statutes "is to prevent unfair competition"). By statute, seventy percent or more of each inmate worker's pay is diverted for restitution, victim's programs, child support, room and board, or taxes. S.C.Code Ann. § 24-3-40 (2007). Increased pay, including overtime pay, for inmate workers ultimately benefits the Department by increasing the funds available to relieve the burden of inmate housing and care; benefits crime victims, both directly through fulfillment of inmates' restitution obligations and indirectly by funding state agencies that provide victim assistance; and benefits inmates' minor children by increasing the amount available for child support. We believe that in crafting these statutes, our General Assembly carefully balanced its desire to maximize inmates' financial contributions against the need to ensure inmate workers do not supplant non-inmate workers in the labor force.

8. We note with some consternation that despite its persistent arguments against paying Tomlin time-and-a-half for overtime under Tomlin's theories of entitlement, the Department admits in its petition for rehearing that applicable federal regulations *"required* [the Department] to pay Tomlin time-and-a-half for his overtime labor." (emphasis supplied) Furthermore, despite the fact the record in this case appears to reflect a failure to pay overtime at the time-and-a-half rate, the Department repeatedly asserts for the first time in its petition for rehearing that it did pay Tomlin time-and-a-half overtime pay for his work on Kwalu projects "on numerous and diverse occasions." We are troubled that these assertions, which might have led to a speedy disposition of this issue before the ALC, escaped counsel's attention for so long.

need not discuss remaining issues when decision on prior issue disposes of appeal).

For the foregoing reasons, we reverse the circuit court's decision concerning overtime pay and remand this issue to the ALC for a determination of whether the Department failed to ' pay Tomlin at the time-and-a-half rate for the hours he worked in excess of forty per week. In the event of such a failure, we instruct the ALC to determine the rate of compensation to which Tomlin was entitled, the number of overtime hours that were underpaid, and the amount the Department owes Tomlin for his labor.

## II. Remaining Issues

With regard to Tomlin's remaining issues, we affirm based upon the following authorities:

1. As to the circuit court's remand to the ALC for determination of the prevailing wage: *Condor, Inc. v. Bd. of Zoning Appeals, City of N. Charleston*, 328 S.C. 173, 178, 493 S.E.2d 342, 344 (1997) (preventing an appellant from arguing on appeal an issue conceded in the trial court); *Bowman v. Bowman*, 357 S.C. 146, 160, 591 S.E.2d 654, 661 (Ct.App.2004) (holding a party cannot seek and receive a particular result at trial and then challenge it on appeal).

2. As to whether Tomlin was an employee of the private sponsor: S.C.Code Ann. § 24-3-40(A) (2007) ("Unless otherwise provided by law, the employer of a prisoner authorized to work ... in a prison industry program provided under Article 3 of this chapter shall pay the prisoner's wages directly to the Department of Corrections."); *Williams v. S.C. Dep't of Corr.*, 372 S.C. 255, 258-59, 641 S.E.2d 885, 887 (2007) (holding a prison industries program sponsor is not an employer of inmates because the sponsor does not exclusively control the payment of inmate wages and finding agreement among other jurisdictions that examined this issue).

3. As to whether Tomlin is entitled to reimbursement of monies deducted from his pay for room and board because he was double-billed for this cost: Rule 210(h), SCACR (limiting appellate review to facts appearing in the record on appeal); *State v. Mitchell*, 330 S.C. 189, 199, 498 S.E.2d 642, 647 (1998)

(placing on appellant the burden of presenting a sufficient record to allow appellate review).

4. As to whether Tomlin is entitled to reimbursement of monies deducted from his pay for room and board because the deduction was unconstitutional: S.C. Const. art. XII, § 2 ("The General Assembly shall establish institutions for the confinement of all persons convicted of such crimes as may be designated by law, and shall provide for the custody, maintenance, health, welfare, education, and rehabilitation of the inmates."); S.C.Code Ann. § 24–3–40 (2007) (allocating portions of inmates' wages for restitution, the State Office of Victim Assistance, child support, room and board, and inmate use); *Brown v. S.C. Dep't of Health & Envtl. Control,* 348 S.C. 507, 515, 560 S.E.2d 410, 414 (2002) ("An appellate court cannot construe a statute without regard to its plain meaning and may not resort to a forced interpretation in an attempt to expand or limit the scope of a statute.").

5. As to whether Tomlin is entitled to reimbursement of monies deducted from his pay for victim's assistance because inmate wages are outside the funds available for appropriations by the General Assembly: S.C.Code Ann. § 24–3–40 (2007) (allocating portions of inmates' wages for restitution, the State Office of Victim Assistance, child support, room and board, and inmate use); S.C.Code Ann. § 16–3–1260 (2003) (requiring persons convicted of criminal acts to reimburse the State and directing such payments to be made from inmate wages to the State Office of Victim Assistance); S.C.Code Ann. § 16–3–1290 (2003) (establishing Victim's Compensation Fund from which State Office of Victim Assistance may pay victims' claims).

## CONCLUSION

We find sections 24–3–315 and 24–3–430(D) entitle inmate workers in a PIP to pay and working conditions comparable to those enjoyed by workers in private industry, including time-and-a-half pay for overtime hours worked. Accordingly, we reverse the circuit court's decision on this issue and remand to the ALC for additional proceedings consistent with this opinion. For the foregoing reasons, we affirm the circuit court's decision on the remaining issues.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

GEATHERS, J., concurs.

PIEPER, J., concurring in part and dissenting in part.

I concur in the majority's conclusion to affirm the decision to remand to determine a prevailing wage. I also concur in the determination that the inmate is not an employee of the private sponsor or entitled to reimbursement for room and board and other costs. However, I respectfully dissent as to any finding that the inmate is entitled to overtime pay. Section 24–3–430 establishes an inmate's right to the prevailing wage, stating "[n]o inmate participating in the program may earn less than the prevailing wage for work of similar nature in the private sector." S.C.Code Ann. § 24–3–430(D) (2007). Our supreme court recognizes that a critical purpose of the prevailing wage provision is to prevent unfair competition. *Adkins v. S.C. Dep't of Corr.*, 360 S.C. 413, 418, 602 S.E.2d 51, 54 (2004). Nonetheless, I would distinguish between prevailing wages and any right to overtime pay for inmates participating in a prison industries program. In fact, there is no authority within the applicable state statutory scheme recognizing any right to overtime pay for inmates.[9] *See* § 24–3–430(D) (2007) (stating only that no inmate participating in the program may earn less than the prevailing wage). Moreover, the inmate never specifically raised the issue of whether a particular federal program provides for the right to overtime pay.

While the Fair Labor Standards Act (FLSA) provides a right to overtime pay for certain employees, the protections of

---

**9.** Although not within the applicable statutory scheme, section 8–11–55 of the South Carolina Code mentions overtime in the context of state employees. That statute only applies to state employees and provides that "[a]ny state employee who is required to work overtime during any particular week may, as a result, be given compensatory time...." S.C.Code Ann. § 8–11–55 (Supp.2009). The statute further provides that any compensatory time granted must be in accordance with the FLSA. As indicated, the FLSA does not apply to inmates and the prevailing wage statute at issue specifically states that inmates participating in the prison industries program are not considered employees of the state. *See* S.C.Code Ann. § 24–3–430(F) (2007).

the act do not apply to inmates working within the prison setting. *See Harker v. State Use Indus.*, 990 F.2d 131, 136 (4th Cir.1993) ("For more than fifty years, Congress has operated on the assumption that the FLSA does not apply to inmate labor. If the FLSA's coverage is to extend within prison walls, Congress must say so, not the courts."). As noted by the Fourth Circuit in *Harker*, inmates participating in these types of programs perform work not to "turn profits for their supposed employer, but rather as a means of rehabilitation and job training." *Id.* at 133.

In sum, I am not convinced the current statutory scheme provides for overtime pay to inmates. Inmates are not employees entitled to the protections of the FLSA, and I do not find it appropriate to read into the prevailing wage statute any such right to inmates voluntarily participating in a prison industries program.[10] As Judge Posner of the Seventh Circuit has explained:

> People are not imprisoned for the purpose of enabling them to earn a living. The prison pays for their keep. If it puts them to work, it is to offset some of the cost of keeping them, or to keep them out of mischief, or to ease their transition to the world outside, or to equip them with skills and habits that will make them less likely to return to crime outside. None of these goals is compatible with federal regulation of their wages and hours. The reason the FLSA contains no express exception for prisoners is probably that the idea was too outlandish to occur to anyone when the legislation was under consideration by Congress.

*Bennett v. Frank*, 395 F.3d 409, 410 (7th Cir.2005). Accordingly, I concur in the decision of the majority to affirm the circuit court and remand to the ALC to determine a prevailing wage; however, I respectfully dissent as to the overtime issue, and I would affirm the finding of the ALC and the circuit court that the inmate is not entitled to overtime pay.

---

10. An inmate's participation in the prison industries program is voluntary and contingent upon consent to the conditions of the employment. S.C.Code Ann. § 24–3–430(C) (2007) ("An inmate *may* participate in the program established pursuant to this section only on a voluntary basis and only after he has been informed of the conditions of his employment.") (emphasis added).